[No. 33724. Department One. April 11, 1957.]

JAMES CASSIDY, JR., *a Minor, by Amelia M. Cassidy, his Guardian ad Litem et al., Respondents,* v. ROBERT L. PETERS *et al., Defendants,* HOUSTON FIRE AND CASUALTY INSURANCE COMPANY OF DALLAS, TEXAS, *Appellant.*[1]

*Sweet, Wolf & Merrick,* for appellant.

*Edwin R. Johnson,* for respondents.

ROSELLINI, J.—On or about September 3, 1953, James Cassidy, Jr., was injured while operating a motor scooter be-

[1]Reported in 309 P. (2d) 767.

longing to the defendants and used for the purpose of selling ice cream. Plaintiffs recovered judgment against them in the superior court of Pierce county and seek in this action to garnish sums which they allege are owed to the defendants under a policy of insurance covering public liability. The garnishee defendant denies liability on two grounds; first, that James Cassidy, Jr. (hereafter referred to as plaintiff), was excluded as a beneficiary by reason of the fact that he was an employee of the defendants; and second, if it should be found that the plaintiff was an independent contractor, that the policy was procured through misrepresentation and therefore void.

The only witnesses who gave testimony regarding the nature of the arrangement under which the plaintiff sold ice cream were the plaintiff, who was fourteen at the time of the accident and seventeen at the time of the trial, and the defendant Gilbert E. Peters.

According to the plaintiff's testimony, on or about September 1, 1953, he set out to find a job and came to the defendants' place of business, which was a shop where motor scooters equipped with refrigeration boxes were kept and ice cream was stored. The mechanic employed by the defendants to maintain the scooters was on duty and asked the plaintiff and two other boys who were with him if they would like a job selling ice cream. They accepted, were given a few instructions regarding the operation of the vehicles, and told to what area they should confine their sales activities. They filled their refrigerator boxes with ice cream bars, popsicles, and half pints of ice cream from the storage unit, and the mechanic made a memorandum of the items taken. They then proceeded to their respective areas, where they drove up and down the streets selling ice cream. They attracted the attention of prospective customers by ringing bells which were attached to the scooters. The bars were sold for ten cents each. Before dark, in accordance with their instructions, they returned to the defendants' shop and accounted for their sales, returning the unsold items and paying to the defendants the wholesale price of the ice cream they had sold. The difference between

the wholesale price and the retail price was retained by the boys, but, out of their profits or commissions, they were required to pay for the gasoline used in the motor scooters.

The boys were not allowed to take the motor scooters home with them, and they were instructed to call the mechanic if they had any trouble with them during the day. They were employed on a day to day basis and were free to report for work, or not, as they chose.

Although a retail price was suggested, the plaintiff was free to sell the ice cream bars at a dollar each if he thought he could get that price. However, he did not state that he was authorized to do so. Nothing was said to him regarding the collection or payment of sales tax.

For two days, the plaintiff worked the area assigned, and on the third day he was assigned a different area. It was on the third day that the accident which resulted in his injuries occurred.

The defendant Gilbert E. Peters testified that he and his brothers operated the ice cream vending business as a hobby; that during the day they were generally busy with their other jobs and left the mechanic in charge of the operation, which consisted of a fleet of vending machines for which drivers were "hired or used." The drivers were assigned routes throughout the city, so there would be no overlapping. The drivers bought the merchandise from the partners at wholesale cost and sold it at retail; they bought their own gasoline and kept up their own daily maintenance, except for major repairs, which were done by the mechanic. The partners acted as agents for the drivers in reporting and remitting sales taxes, under an arrangement with the tax commission.

Credit was extended to the drivers each day for the merchandise which they took with them, and any unsold merchandise was returned to the partners, with appropriate credit given.

The drivers were given a specified route to follow and a suggested way of working it, but they were not specifically required to follow that route. The boys sold ice cream exclusively from the defendants' equipment. The licenses for

this equipment were purchased by the defendants, and they considered themselves liable for any damages resulting from the operation of the equipment.

The boys were told to report for work by eleven o'clock each day and to return before dark. If they left their territory, they were reprimanded. The defendants had the right to discharge the boys without notice, although they never exercised the right without cause. They would not go out on the job and discharge a boy, but would simply tell him not to report for work the next day. The drivers were not allowed to turn their scooters over to anyone else without the defendants' permission. They were not supposed to sell ice cream obtained from sources other than the defendants.

On one occasion, the boys had staged a demonstration in front of the defendants' place of business in an effort to obtain louder bells for their vehicles, but when the defendant Gilbert E. Peters appeared and told them to go to work, they did so without further protest.

The boys were shown their respective sales areas on a map and were told generally how to work them. They were instructed to keep off of steep hills. They were instructed to stop frequently at service stations and wash their hands and to keep themselves clean. It was recommended that they keep their speed down to twenty miles per hour, which was approximately the maximum speed at which the vehicles were capable of traveling. Once the boys had left the shop, there was no further supervision. However, whenever a complaint was received regarding the conduct of one of the boys on his route, he was told about it at the end of the day and was advised to avoid the offending practice.

An unsigned application for insurance was introduced in evidence over the plaintiff's objection. According to the information contained in the application, the defendants had twelve employees and desired no coverage for work let to independent contractors. The comprehensive liability policy issued excluded employees and made no mention of independent contractors.

On this evidence, the trial court found that the drivers paid the wholesale price out of the retail price received for

the ice cream and paid the sales tax thereon (through the defendants); that they could sell at any price they chose; that they purchased their own gas and oil; that the defendants exercised no control over them while they were covering their routes; that they worked under day to day contracts and came to work, or not, as they chose; that there was no money furnished them for making change; and that there was no control by the defendants as to how the sales were to be made or the work to be done, but suggestions were made and routes assigned for the mutual benefit of the parties.

Upon these findings, the court concluded that the plaintiff was an independent contractor and entitled to the benefits of the policy. Judgment was entered against the garnishee defendant in the amount of $3,161.64.

No express finding was made regarding the issue of misrepresentation; however, there was a finding that the use of the word "employees" in the insurance application was casual, and a conclusion (contained in the findings) that its use did not in any way change or determine the actual relationship between the parties.

The first question raised is whether the court erred in determining that the plaintiff was an independent contractor rather than an employee. If this question is answered in the affirmative, it will be unnecessary to consider the garnishee defendant's contention that the policy was procured through misrepresentation as to the status of the drivers.

 The right to control on the part of the employer is the test of the relationship of employer and employee. *James v. Ellis*, 44 Wn. (2d) 599, 269 P. (2d) 573; *Langness v. Ketonen*, 42 Wn. (2d) 394, 255 P. (2d) 551; *Skrivanich v. Davis*, 29 Wn. (2d) 150, 186 P. (2d) 364; *D'Amico v. Conguista*, 24 Wn. (2d) 674, 167 P. (2d) 157.

"According to the accepted definition in this state, an independent contractor is one who, while rendering service in the course of an independent occupation, represents the will of his employer only as to the result of the work, and not as to the manner or means by which it is accomplished.

The test by which it is determined whether the relation is that of employer and employee or that of independent contractor is whether or not the employer retained the right, or had the right under the contract, to control the mode or manner in which the work was to be done. *Simila v. Northwestern Imp. Co.*, 73 Wash. 285, 131 Pac. 831; *Johnston v. Seattle Taxicab & Transfer Co.*, 85 Wash. 551, 148 Pac. 900; *Leech v. Sultan R. & Timber Co.*, 161 Wash. 426, 297 Pac. 203; *Hollingsworth v. Robe Lumber Co.*, 182 Wash. 74, 45 P. (2d) 614. All of these cases emphasize the point that the chief, and most decisive, circumstance in determining whether the relationship is that of employer and employee or that of independent contractor is the right of control over the work or thing to be done." *Sills v. Sorenson*, 192 Wash. 318, 73 P. (2d) 798.

It is not the actual exercise of the right of interfering with the work but the right to control which constitutes the test. *Swam v. Aetna Life Ins. Co.*, 155 Wash. 402, 284 Pac. 792, quoting from 31 C. J., p. 474. In that case, we held that a man hired to repair a windmill, a task which required only a short space of time, "hardly sufficient in importance to form the basis of an independent contract," was an employee, not an independent contractor, even though the employer did not know how to repair the windmill himself and could not direct the way in which the work was to be done. The decision was based primarily on the fact that the employment could be terminated at any time without liability on the part of the employer.

Here we have a partnership formed for the purpose of selling ice cream. The merchandise was distributed and sold by means of motor scooters, equipped with refrigerator boxes, and operated by young salesmen. This was the essence of the business. It is obvious that without the motor scooters, the drivers would have had no way to preserve the ice cream long enough to sell it. The drivers paid no consideration for the use of these vehicles, and they were given instructions as to their use, instructions as detailed as the situation required. It is also plain from the testimony of the defendant Gilbert E. Peters, that he considered himself entitled to control the use of the vehicles,

and in fact he permitted the boys to use them only in connection with the business. It is true, as the trial court observed, that the partners exercised no direct control or supervision over the drivers while they were covering their routes; but as a practical matter, direct supervision was uncalled for and virtually impossible. It is not a necessary element of control. See *James v. Ellis, supra,* wherein we held that a workman using his car to transport his fellow workmen to their place of employment was an employee, not an independent contractor.

Nor is the manner of payment determinative of the question. In *Skrivanich v. Davis, supra,* we held that fishermen employed on a fishing vessel on a profit-sharing basis were employees because the owners had the right to control the manner and means of operation on the vessel, as against the contention that the fishermen were engaged in a joint venture. Furthermore, the fact that certain expenses were to be deducted before division of the balance into shares did not change the status of the fishermen. This, we said, was simply a method of determining the amount to be paid to members of the crews for their labor and did not convert the arrangement into a joint venture.

Likewise the financial arrangement in the present case was merely the method used in determining the remuneration, and was the one most practical under the circumstances. It did not affect the defendants' right to control the use of their equipment in the sales activity.

1 Restatement, Agency, 483-485, § 220, sets forth the following matters of fact which are considered in determining whether one acting for another is a servant or an independent contractor:

"(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

"(b) whether or not the one employed is engaged in a distinct occupation or business;

"(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

"(d) the skill required in the particular occupation;

"(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

"(f) the length of time for which the person is employed;

"(g) the method of payment, whether by the time or by the job;

"(h) whether or not the work is a part of the regular business of the employer; and

"(i) whether or not the parties believe they are creating the relationship of master and servant."

Applying subdivision (a) above to the facts of this case, it appears that there was no express agreement as to the extent of control; however, the defendants exercised all of the control which was practicable under the circumstances. Applying subdivision (b), the plaintiff was not engaged in a distinct occupation or business; in fact, his only previous employment had been berry and bean picking. As to subdivision (c), there was no evidence presented on this question, but it is obvious that the services of a specialist were not required. The skill required was minimal.

As we have pointed out previously, the employer furnished the equipment and designated the place where the work was to be done, a factor under subdivision (e).

The length of time was, of course, brief. In comment on subdivision (f), the Restatment has this to say:

"The time of employment and the method of payment are important. If the time of employment is short, the worker is less apt to subject himself to control as to details and the job is more likely to be considered his job than of the one employing him. This is especially true if payment is to be made by the job and not by the hour. If, however, the work is not skilled, or if the employer supplies the instrumentalities, the workman may be found to be a servant."

Under the evidence, this subdivision is most favorable to the position of the plaintiff. However, the two circumstances giving rise to exceptions are present; and this court has not placed much emphasis on the element of continuous service. See *Swam v. Aetna Life Ins. Co., supra.* Furthermore, while the employment was characterized as a "day to day" contract, the plaintiff had worked three days when

his accident occurred, and the testimony of the defendant Gilbert E. Peters indicated that the boys worked continuously if they desired to do so.

Applying subdivision (g), the plaintiff was paid neither by the time nor by the job, and, as stated above, this factor, under our decisions, is not determinative.

Under subdivision (h), the work was not only a part of the regular business of the employers (that of ice cream vending), but was the essence of it.

Finally, there is the question, under subdivision (i), of whether the parties believed they were creating the relationship of master and servant. It is evident from the testimony of the plaintiff that he regarded himself as an employee, subject to the directions of those whose equipment he operated. In reporting to the state tax commission, it appears that the defendants classified the drivers as independent contractors, or vendors, since the sales tax was charged to them; but in making application for insurance, it appears that they regarded them as employees. The statements of the defendant Gilbert E. Peters indicate that he felt he had the right to control the use of his equipment, whether he characterized the drivers as contractors or servants.

The plaintiff relies upon two cases, *Broderick, Inc. v. Riley,* 22 Wn. (2d) 760, 157 P. (2d) 954, and *Washington Recorder Pub. Co. v. Ernst,* 199 Wash. 176, 91 P. (2d) 718, 124 A. L. R. 667, to sustain the position taken by the trial court. Both of these cases arose under the unemployment compensation act and are distinguishable on the facts from the case presented here. In the *Broderick* case, it was determined that brokers employed by the defendant did not render personal services for another for wages, remuneration, or under a contract of hire, within the meaning of the statute. In the *Recorder* case, newsboys who entered into written contracts specifying that they were not employees, who purchased newspapers from the defendant (apparently with no right to return the unsold copies), and who used their own equipment in distributing them, were held to be independent contractors not covered by the act. The

decisions in those cases do not control the question now before this court.

We are forced to conclude that the evidence does not support the trial court's finding that the defendants had no right to control the plaintiff in the performance of his work and that under the facts disclosed by the record, the relationship between the plaintiff and the defendants was that of master and servant.

The judgment is reversed.

SCHWELLENBACH, DONWORTH, FINLEY, and FOSTER, JJ., concur.