[No. 34994.   Department One.   January 28, 1960.]

JULIUS FARDIG, *Appellant,* v. WILLIAM REYNOLDS *et al.,*
*Respondents.*[1]

[1]Reported in 348 P. (2d) 661.

*Miracle, Treadwell & Pruzan* and *Hoof, Shucklin & Harris,* for appellant.

*Bayley, Fite, Westberg & Madden* and *Hullin, Ehrlichman, Carroll & Roberts,* for respondents.

DONWORTH, J.—The sole question presented by this appeal is whether the tort feasors, Reynolds and Castagno, were the agents of either respondents Sparling, Inc., and Fauschald Sales, Inc., and/or of respondent Mountain Tree Farm Company by virtue of certain logging contracts (described below), so that any or all of these respondents are liable for the negligent acts of Reynolds and Castagno.

Appellant instituted this action against Reynolds and Castagno, partners, engaged in the logging business, who had contracted with him to haul logs for them in his own truck, to recover for serious personal injuries sustained by him while assisting them in loading logs thereon. The acts of negligence alleged were all acts performed by Castagno in connection with the logging operation conducted by Reynolds and Castagno, herein referred to as the tort feasors. Appellant sought recovery also against the respondents above named, under the doctrine of *respondeat superior,* solely on account of their respective contractual relationship with the tort feasors in connection with the logging operation in the course of which appellant was injured.[2]

---

[2]Pursuant to stipulation of the parties, the court, by order, substituted Sparling, Inc., as a defendant in lieu of Donald Sparling and wife, and substituted Fauschald Sales, Inc., in lieu of Nils Fauschald and wife.

At the close of appellant's evidence, the trial court sustained the challenge of the several respondents to the sufficiency thereof to make a *prima facie* case to be submitted to the jury on the issue of their liability for the negligent acts of the tort feasors.

The trial proceeded as to the tort feasors and resulted in a verdict for appellant against them in a substantial sum. Judgment was entered on the verdict and no appeal has been taken therefrom.

Thereafter, the court entered a judgment dismissing, with prejudice, appellant's action against all respondents. It is from this judgment that the present appeal is prosecuted.

This appeal is before us on a short record. Appellant's statement of points on which he intends to rely (required by Rule on Appeal 34(3), 34A Wn. (2d) 36) sets forth two items:

"1. The trial court erred in granting the challenge to the sufficiency of the evidence made by defendants Sparling, Fauschald and Mountain Tree Farm Company and dismissing plaintiff's complaint as to each of them.

"2. The trial court erred in denying plaintiff's motion for reconsideration of oral order granting defendants Sparling, Fauschald and Mountain Tree Farm Company's challenge to the sufficiency of plaintiff's evidence, or in the alternative, for a judgment notwithstanding said oral order against said defendants, or in the alternative, for a new trial against said defendants on issue of agency alone."

These two points involve the same legal question.

There is no serious factual dispute in this case. Our decision depends on the proper interpretation of the two contracts involved when considered in the light of the circumstances surrounding their signing and performance.

Briefly stated, the basic facts are that respondent Mountain Tree Farm Company (hereinafter referred to as the owner) owned two tracts of land situated near Cedar Falls in King county—one containing 160 acres of logged land, and the other, 300 acres of unsalvaged areas of logged land. In June, 1955, the owner entered into a written contract with respondents Sparling, Inc., and Fauschald Sales, Inc. (hereinafter called the operator), effective December 1,

1955, wherein the operator agreed to cut and remove from the land all timber designated by the owner as suitable for prelogging and relogging operations, and to deliver pulp logs and saw logs of certain sizes to two mills in Everett and receive the market price therefor. This contract (which is more than four pages long) contained numerous provisions prescribing the manner of its performance by the operator. These provisions appear to be designed to protect the owner against various hazards which might arise in connection with the operation. This prime contract contains two particularly significant provisions, which read as follows:

"Operator shall indemnify and hold harmless Owner against all claims or liabilities asserted by third persons resulting directly or indirectly from the Operator's acts or omissions hereunder whether negligent or otherwise.

"Nothing herein contained shall be construed to make Operator an agent of Owner or to authorize Operator to obligate Owner or to constitute Operator and Owner joint adventurers."

The other contract, which was entered into in August, 1955, between the operator (respondents Sparling, Inc., and Fauschald Sales, Inc.) and W. J. Reynolds and Victor Castagno (hereinafter called the subcontractors), provided in general that the subcontractors would perform the provisions of the prime contract which the operator was obligated to perform thereunder. After reciting the existence of the prime contract, the first two paragraphs of the subcontract read as follows:

"1. That the said Sub-Contractor shall furnish all labor, materials and equipment required to be furnished and used in order to relog certain areas on the Mountain Tree Farm Company's lands, as directed by the Contractor, and the said Sub-Contractor agrees to relog portions of said areas accordingly.

"2. That the said Sub-Contractor shall be and is hereby bound by the terms and conditions and provisions of the general contract between the Contractor and Mountain Tree Farm Company and shall obey and carry out the said terms, conditions and provisions insofar as the same shall be declared by the Contractor to apply to this Sub-Contract."

Paragraph nine, the last paragraph of the subcontract, provides:

"That the said Sub-Contractor agrees to comply with all directives and orders of the Contractor *in order that said contract between the Contractor and Mountain Tree Farm Company shall be performed to the full satisfaction of the contractor.*" (Italics ours.)

It is well settled in this state that the ultimate test to be employed in determining whether a relationship is that of employer and employee or that of principal and independent contractor is to inquire whether or not the employer retained the right, or had the right under the contract, to control the manner of doing the work and the means by which the result was to be accomplished. *Cassidy v. Peters,* 50 Wn. (2d) 115, 309 P. (2d) 767 (1957).

It is not the actual exercise of the right of interference with the work, but the *right* to control, which constitutes the test. *Swam v. Aetna Life Ins. Co.,* 155 Wash. 402, 284 Pac. 792 (1930), quoting from 31 C. J., p. 474; *Cassidy v. Peters, supra.*

Appellant contends that paragraph nine, *supra,* of the subcontract gave respondents Sparling and Fauschald an unconditional and unlimited right to control, which would necessarily include the right to control the mode or manner in which the work was to be done.

Perhaps appellant's contention would be well taken if that portion of paragraph nine, *supra,* which we have italicized were not included therein. However, to place upon this provision the interpretation urged by appellant, would be to render the italicized portion redundant and meaningless.

"In construing the contract, it is, of course, elementary that the intention of the parties thereto is to be gathered from the whole instrument, *and each part, if possible, should be construed so that all the parts thereof may have some effect.* . . ." (Italics ours.) *Hollingsworth v. Robe Lbr. Co.,* 182 Wash. 74, 45 P. (2d) 614 (1935).

Thus, if we are to give any effect at all to the italicized language of paragraph nine, *supra,* it would seem that the

parties intended that the operator was to have the right to give such directives and orders as might be necessary to insure that his contract with the owner was satisfactorily performed. However, if it can still be said that the question of intention, in so far as it is disclosed from the face of the contract itself, is not altogether free from doubt, we may then resort to the subsequent acts of the parties to ascertain what was intended. *In re Garrity's Estate,* 22 Wn. (2d) 391, 156 P. (2d) 217 (1945).

The undisputed evidence in this case is that neither Sparling nor Fauschald was ever on the job site during the period this work was being performed. If it were intended that the operator was to have the right to control the details of the work, it seems to us that they, or someone representing them, would have appeared on the job site, at least periodically, to exercise the right.

However, the only relations the subcontractors had with anyone on the job, other than themselves and their own employees, was Mr. Goodrich, the superintendent of the owner. He saw to it that they took logs only from the areas specified in the prime contract, that the sanitary regulations prescribed by the city of Seattle for its watershed were being observed, and that the owner's roads, which the operator had permission to use, were not damaged during the course of the operation. Clearly, these functions are supervisory and were to insure that the work was being performed in compliance with the provisions of the prime contract. The supervision of work for the purpose of merely determining whether or not it is being done in accordance with the contract, does not affect the independence of the relationship. *Larson v. American Bridge Co.,* 40 Wash. 224, 82 Pac. 294 (1905).

In conclusion, we hold that the right of control retained by the operator over the work performed by the subcontractors was limited to those measures necessary to insure that the prime contract was performed according to its terms and conditions. Furthermore, we do not find

any evidence in this case to support the contention that the subcontractors were employees of the owner.

The trial court's judgment dismissing, with prejudice, appellant's action against all respondents is hereby affirmed.

WEAVER, C. J., MALLERY, FINLEY, and OTT, JJ., concur.

