[No. 1915-1.    Division One.    February 25, 1974.]

HERMAN MONTOYA, *Respondent*, v. GREENWAY ALUMINUM COMPANY, INC., *Appellant*, COLLATOR CORPORATION, *Respondent.*

*Williams, Lanza, Kastner & Gibbs* and *William D. Cameron,* for appellant.

*Ferguson & Burdell, W. Wesselhoeft, James P. McGowan, Hoover, Lind & Parkhurst,* and *Fred N. Hoover,* for respondents.

CALLOW, J.—Quaere: Is a third party sued by an employee for injuries suffered in an industrial accident entitled to indemnity from the employer when the injury resulted from the negligence of the employer and/or the third party?

2 A. Larson, *Workmen's Compensation* § 76.10, at 227 (1970), poses the inquiry as follows:

Perhaps the most evenly-balanced controversy in all of compensation law is the question whether a third party in an action by the employee can get contribution or

indemnity from the employer, when the employer's negligence has caused or contributed to the injury.

(Footnote omitted.)

Herman Montoya, an employee of Collator Corporation, was injured on the premises of the third party, Greenway Aluminum Company, Inc. The action by the plaintiff-employee (Montoya) against the third party (Greenway) was settled prior to oral appellate argument. Only the issue of indemnity from the employer to the third party remains. The third party contends that the indemnity issue raises three questions: (1) Is an independent duty of the employer to indemnify the third party arising from contract, expressed or implied, free of the exclusive jurisdiction provision of the industrial insurance act? (2) Does an employer owe the third party an implied obligation of due care in performance where the third party allows the employer to perform work upon the third party's premises? (3) Where an employer breaches his duty to perform work upon the third party's premises with due care, thereby imposing liability upon the third party, and the parties are not in pari delicto, is the third party entitled to indemnity from the employer?

Greenway Aluminum Company, Inc. and Collator Corporation are engaged separately in aluminum fabrication. They occupy adjoining premises in a building in Seattle. The president and owner of Collator is also the president and owner of a third corporation which owns the building. Greenway rented its premises from this corporation.

Prior to the accident that gave rise to this action, Collator arranged with Greenway for the use of certain cleaning and caustic tanks which were located upon the premises occupied by Greenway. These tanks often were not used by Greenway, and the arrangement allowed Collator to use them whenever Greenway did not. Greenway received no benefit from the arrangement which it permitted in order to accommodate the corporation owned by its landlord. Greenway continued to pay all utility charges associated with the tanks as well as the expense of the chemicals.

There was no arrangement by which Collator or any person associated with Collator was to notify Greenway when Collator intended to use the tanks, and no actual notice was ever given to Greenway that employees of Collator were working on Greenway's premises.

The accident occurred on March 20, 1970, when Herman Montoya, a Collator employee was doing processing work for Collator on the Greenway premises. While so engaged, Montoya was walking on top of four rectangular open tanks containing respectively, caustic chemical, cold water, acid and hot water. Montoya was working with a suspended rack which could be positioned over and lowered into either tank. He pulled this rack out of the hot water and started to push it, lost his footing and fell to his waist in the hot water tank sustaining first- and second-degree burns. There was extended testimony concerning alternative methods for moving the rack that Montoya could or should have used. There is also a conflict in the evidence about whether Montoya was adequately warned against walking on the tank. However, sufficient evidence was presented to the jury to support a finding that Greenway was negligent in its maintenance of the premises and Collator was negligent in failing to adequately instruct Montoya and provide him with certain safety equipment. Greenway alleged four alternative grounds for indemnity: (1) Collator had a licensee relation with Greenway which required Collator, by implication, to conduct its work upon Greenway's premises in a safe, reasonable manner; (2) Collator violated its obligation of reasonable care; (3) Collator's negligence was active and primary while Greenway's negligence, if any, was passive; and (4) Collator and Greenway had an implied contract of indemnity which arose out of the legal relationship between the parties with respect to the use of Greenway's premises. The trial court refused to grant indemnity against Collator as a matter of law or submit the issue of indemnity to the jury and dismiss the action against Collator Corporation at the close of the presentation of evidence. The trial court instructed the jury on

negligence and contributory negligence as between the employee and the third party. The jury could consider only those issues and returned a verdict of $17,000 for Montoya against Greenway.

Collator contends it is immune from Greenway's actions for indemnity by reason of the industrial insurance act, RCW 51, which, it is argued, establishes the statutory compensation as the sole remedy against an employer and bars any remedy at common law.

There are strong arguments for both positions. The employer may argue that indemnification to the third party against the judgment the employee has recovered for the third party's negligence should not be required when one of the purposes of industrial insurance is to limit the employer's liability for compensation payments. The third party may claim it should not bear the whole burden of liability when the employer may have been negligent also and would have had to share or bear the liability entirely but for the happenstance that the plaintiff-employee and his negligent employer are covered by the compensation act. The third party may argue further against thusly being required to support the compensation system when the responsibility normally would be shared with or borne entirely by the employer.

■■ RCW 51.04.010, in declaring the exercise of the police power and sovereign power of the state in establishing the industrial insurance system, stated that:

> all phases of the premises are withdrawn from private controversy, . . . regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this title; and to that end all civil actions and civil causes of action for such personal injuries and all jurisdiction of the courts of the state over such causes are hereby abolished, except as in this title provided.

The statute on its face sets forth a recital of remedies that are all-inclusive. This recital encompasses the status of both the employer and the employee. As noted in *Greenleaf v. Puget Sound Bridge & Dredging Co.*, 58 Wn.2d 647, 658,

364 P.2d 796 (1961), quoting from *Stertz v. Industrial Ins. Comm'n*, 91 Wash. 588, 158 P. 256 (1916):

> When the employer, for his part, pays his share into this fund, all obligation on his part *to anybody* is ended.

(Italics ours.)

The industrial insurance act is intended to grant the employee a sure and certain relief while imposing liability upon the accident fund regardless of the fault or due care of either the employer or the employee. Historically, under the act, the employer, as a party defendant, was not to be looked to for recourse; but the fund, set up to provide for the losses which inevitably would occur, was the source for recovery. *See Boeing Aircraft Co. v. Department of Labor & Indus.*, 22 Wn.2d 423, 156 P.2d 640 (1945). The act now imposes upon all employers in a class (except self-insureds under RCW 51.14) the responsibility of paying into the accident fund so much in premiums as is necessary to maintain the solvency of the fund. RCW 51.16.035. When an injury to a workman results from the negligence of another not in the same employ, the employee must elect to take under the act or seek a common-law remedy against the third party. RCW 51.24.010. Then, as stated in *Davis v. Early Constr. Co.*, 63 Wn.2d 252, 256, 386 P.2d 958 (1963):

> for RCW 51.24.010 provides immunity to the employer only. RCW 51.24.010 is not a bar to an action against a negligent third party, whether such party be engaged in extrahazardous employment or not.

Thus, the freedom from suit provided to the employer is a statutory immunity granted in return for the premiums paid into the fund and the loss of legal defenses. Since RCW 51.24.010, which grants the employee the right to bring an action against a third party tort-feasor, is also held to grant an immunity from suit to the employer (which immunity already existed insofar as an action by the employee was concerned) the only grant of immunity that can flow to the employer from RCW 51.24.010 is immunity from suit by the third party.

The arrangement between the employer and the third party was a casual use by the employer of the third party's premises under an oral permission. Their understanding went no further than to allow the use of facilities and did not contemplate the ramifications or possible consequences of that use. In *Tucci & Sons, Inc. v. Carl T. Madsen, Inc.*, 1 Wn. App. 1035, 467 P.2d 386 (1970), the employer (subcontractor) entered into a written agreement with the third party (contractor) which included an indemnity clause agreeing to save the third party harmless from all suits arising out of performance of the contract. When the employee was injured, the written indemnification clause was upheld. The court said the employer could voluntarily assume the burden of indemnification and create a contractual right with a third party independent of the exclusive jurisdiction provisions of the compensation acts. The decision indicates that an indemnity will not be implied in the absence of a contract between the parties. It did not go so far as to state that a specific written indemnification agreement is a sine qua non for recovery by a third party. That slim question was not before the court, and it is not before us now. *See also Umnus v. Wisconsin Pub. Serv. Corp.*, 260 Wis. 433, 51 N.W.2d 42 (1952); 2 A. Larson, *Workmen's Compensation* § 76.41 (1970).

Implied promises to indemnify the third party have been found by other courts when a contractual relationship had been entered into between the employer and the third party. *Weyerhaeuser S.S. Co. v. Nacirema Operating Co.*, 355 U.S. 563, 2 L. Ed. 2d 491, 78 S. Ct. 438 (1958); *Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp.*, 350 U.S. 124, 100 L. Ed. 133, 76 S. Ct. 232 (1956). As stated in *Weyerhaeuser S.S. Co. v. United States*, 372 U.S. 597, 602, 10 L. Ed. 2d 1, 83 S. Ct. 926 (1963):

> The Court's decision in *Ryan* was based upon the existence of a contractual relationship between the shipowner and the employer.

An indemnity will not exist in this state in the face of the

industrial insurance act in the absence of a contract between the indemnitor and indemnitee. *Broxson v. Chicago, M., St. P. & P. R.R.*, 446 F.2d 628 (9th Cir. 1971); *Tucci & Sons, Inc. v. Carl T. Madsen, Inc., supra.* The employer may ignore the immunity of the industrial insurance act and indemnify the third party when the parties have independently created such a contractual right. It will not exist otherwise.

In *Slattery v. Marra Bros.*, 186 F.2d 134 (2d Cir. 1951), a third-party property owner brought an action against the employer of an employee injured on the third party's premises. The third party contended that the employer was obligated to indemnify him for losses brought about by the employee's action based upon the unsafe condition of the premises. The action for indemnity was dismissed with the court stating at page 139:

> we shall assume that, when the indemnitor and indemnitee are both liable to the injured person, it is the law of New Jersey that, regardless of any other relation between them, the difference in gravity of their faults may be great enough to throw the whole loss upon one. We cannot, however, agree that that result is rationally possible except upon the assumption that both parties are liable to the same person for the joint wrong. If so, when one of the two is not so liable, the right of the other to indemnity must be found in rights and liabilities arising out of some other legal transaction between the two.
>
> . . .
>
> . . . So far as we can see therefore there is nobody of sure authority for saying that differences in the degrees of fault between two tortfeasors will without more strip one of them, if he is an employer, of the protection of a compensation act; . . .

The result must be the same under the Washington act. The employer cannot be burdened with possible liability as a joint tort-feasor in the event of injury to the employee. The absolute right of recovery given to the workman under the act regardless of his fault carries with it a concomitant right to freedom from suit for the employer regardless of fault. The liability for fault being removed, it should not be

reimposed by an allegation of negligence against the employer coming from a third party. The rationale behind the Washington approach to industrial insurance further dictates that the responsibility of the employer cannot be imposed upon or shared with the third person if the employee elects to take under the act. It follows that the liability of the third person as a tort-feasor may not be placed on the immune employer if the employee elects to pursue a common-law remedy under RCW 51.24.010.

The negligence of the third party in this case is established by the verdict. Even if the jury had been granted the chance to find the employer contributed to the injury to the employee together with the third party, the employer could not have been held to contribution by the third party. The liability of the employer comes from the act and not from negligence under many other compensation acts as well as under ours. *Great Northern Ry. v. Bartlett & Co., Grain*, 298 F.2d 90 (8th Cir. 1962); *White v. McKenzie Elec. Cooperative, Inc.*, 225 F. Supp. 940 (D.N.D. 1964); *Employers Mut. Liab. Ins. Co. v. Griffin Constr. Co.*, 280 S.W.2d 179, 53 A.L.R.2d 967 (Ky. App. 1955); *Husted v. Consumers Power Co.*, 376 Mich. 41, 135 N.W.2d 370 (1965); *Hendrickson v. Minnesota Power & Light Co.*, 258 Minn. 368, 104 N.W.2d 843 (1960); Annot., 53 A.L.R.2d 977 (1957). *See also* 2 A. Larson, *Workmen's Compensation* § 76.21 (1970).

The third party suggests that an independent obligation exists from the employer to the third party based upon the alleged negligence of the employer which caused the loss to the third party. The support for this position comes from cases interpreting acts which envision a direct relationship between the employee and the employer and regard the employee as entitled to compensation from the employer rather than to a fixed payment from an insurance fund. Courts have granted contribution or indemnity under compensation acts which do not withdraw all phases of the premises from private controversy and which are limited in the scope of their operation. *See American Dist. Tel. Co. v. Kittleson*, 179 F.2d 946 (8th Cir. 1950); *Maio v. Fahs*, 339

Pa. 180, 14 A.2d 105 (1940); and *compare San Francisco Unified School Dist. v. California Bldg. Maintenance Co.,* 162 Cal. App. 2d 434, 328 P.2d 785 (1958) *with Baugh v. Rogers,* 24 Cal. 2d 200, 148 P.2d 633, 152 A.L.R. 1043 (1944) and the dissenting opinion of Justice Traynor.

However, the majority rule is that where the act is categorically exclusive, it encompasses the employer in impenetrable immunity. *General Elec. Co. v. Cuban American Nickel Co.,* 396 F.2d 89 (5th Cir. 1968); *Roberts v. American Chain & Cable Co.,* 259 A.2d 43 (Me. 1969); *Young v. Anaconda American Brass Co.,* 43 Wis. 2d 36, 168 N.W.2d 112 (1969); 101 C.J.S. *Workmen's Compensation* § 982 (1958).

*Hill Lines, Inc. v. Pittsburg Plate Glass Co.,* 222 F.2d 854 (10th Cir. 1955), involved the Workmen's Compensation Act of New Mexico. An employee of Pittsburg Plate Glass Company was injured while unloading a truck owned by Hill Lines. The employee brought a negligence action against the truck owner, who in turn sought indemnity from the employer. The dismissal of the third-party complaint was upheld. Hill Lines had argued that Interstate Commerce Commission rules and regulations placed full responsibility for unloading the truck on the employer who therefore owed an independent duty to both the employee and the third party to accomplish the unloading in a prudent manner. The court construed the statute and answered the argument of the third party as follows at page 857:

A construction of emphatic words protecting the employer from "any other liability whatsoever" to "any and all persons whomsoever" for "personal injury to" his employee, to require contribution to a third person for the injuries covered by the act, as urged by Hill Lines, would render the words of exclusion meaningless, and dissipate the purpose of the act to grant immunity to the employer in exchange for his absolute, though limited, liability to secure compensation to his employees. . . . If, therefore, the basis for Pittsburgh's liability is the injuries to

its employee, it is limited by the workmen's compensation act, and there can be no contribution.

. . .

The most that can be said of Hill Lines' theory is that by virtue of the contractual relationship between Hill Lines and Pittsburgh with respect to unloading the truck, Pittsburgh became solely liable to its employee for his injuries. The answer is that if Pittsburgh is either solely or jointly liable for those injuries, its liability is limited by the workmen's compensation act. The result is the same. In either event, the workmen's compensation law operates to insulate Pittsburgh from liability to Hill Lines.

In the final analysis, the issue must be resolved by an interpretation of the statutes involved. Under the Washington system of industrial insurance, the liability of the employer is exclusively to the fund unless otherwise provided by the act or contracted for by the employer. The duty of the employer is satisfied by compliance with the act. The exclusiveness of the remedy under the act applies to claims by a third party against the employer for contribution or indemnity, against an employer joint tort-feasor, against an employer claimed to be actively or primarily negligent by a third party claiming to be passively or secondarily negligent, and against claims alleging an independent duty of the employer to the third party in transactions involving the employment of the workman. All of these theories which would place an outside burden upon the insured employer are overridden by the policy of the act.

The judgment is affirmed.

HOROWITZ and FARRIS, JJ., concur.