[No. 44838. En Banc. July 27, 1978.]

EVELYN N. KELLEY, *Respondent,* v. HOWARD S. WRIGHT
CONSTRUCTION CO., *Appellant.*

*Williams, Lanza, Kastner & Gibbs,* by *Joseph J. Lanza,* for appellant.

*Lembhard G. Howell,* for respondent.

HOROWITZ, J.—This case raises the issue of the duty of a general contractor on a multi–employer jobsite to take safety precautions for the benefit of employees of subcontractors working on the site.

Edward Kelley, an employee of a subcontractor hired by defendant Wright Construction Company, brought this action for damages for personal injuries he sustained due to the alleged negligence of Wright, the general contractor. The trial judge gave the jury instructions regarding Wright's duty of care, including an instruction that Wright was under a duty to comply with an Occupational Safety and Health Act (OSHA) safety regulation which required specific safeguards for workmen on Kelley's crew. The evidence showed Wright did not comply with the regulation. The jury found Wright negligent, plaintiff Kelley 10 percent contributorially negligent, and damages in the amount of $800,000. The judge reduced the damages by 10 percent for plaintiff's negligence and entered judgment for the plaintiff in the amount of $720,000.

Defendant Wright appeals, claiming: (1) it had no duty to comply with safety regulations for Kelley's benefit; (2) that certain exhibits were improperly admitted into evidence; and (3) the award of damages should have been reduced by a percentage equal to the percentage of negligence attributable to the injured man's employer. Plaintiff

cross–appeals, claiming his award should not be reduced for his own contributory negligence. We affirm the judgment of the trial court and dismiss the cross appeal for the reasons stated herein.

Defendant Wright Construction Company (Wright) was the general contractor for the construction of the Bank of California Center Building in Seattle. Wright contracted with H. H. Robertson, Kelley's employer, for the metal decking on the project. Robertson's crews laid panels of decking over the bare structural beams. Therefore the workers often had to walk over bare beams in order to begin their work. After reaching a bundle of decking panels, the men laid a temporary platform from which to work. It was from such a temporary platform, measuring 6 feet by 36 feet, on the fourth floor level of the bank building, that plaintiff, Edward Kelley, fell.

Kelley was a special apprentice assigned to the crew laying metal decking. He had begun work without proper shoes, wearing street shoes with rather high heels. Some time prior to the accident he had been seen slipping, and was told to get shoes with lower heels for work. There is no standard footwear established for iron workers. On the day of the accident he was wearing regular engineer boots with 1/2–inch rubber heels and leather soles.

The day of the accident, December 19, 1972, was windy, cold and rainy. Robertson's crew was unable to work in the tower because of the weather, but chose to work on the fourth floor level of the bank building rather than go home. The conditions there were worsened by a residue of fireproofing material on the beams which was slippery when wet. In order to get out to the bundles of decking panels the workers had to walk over bare beams. They wore no safety belts or lifelines; there was no safety net in place. Kelley was working with another member of the crew, laying decking. He was walking "on his heels," perhaps to avoid putting his leather soles on the slick surface of the temporary surface of the temporary platform. As he walked toward the stack to get another panel, his feet slipped out

from under him and he pitched off the end of the platform head first. He fell over 29 feet to the concrete floor below, striking his head on a piece of electrical conduit and sustaining severe injuries. He was unable to testify at the trial because of brain damage and has been represented in these proceedings by his sister, who is acting as guardian ad litem.

Kelley's employer, H. H. Robertson, is covered by the State Industrial Insurance Act and is immune from liability in any action for Kelley's injuries. Kelley's medical bills and monthly compensation benefits are being paid by the Department of Labor and Industries pursuant to the insurance act, pending the outcome of this case. The suit is brought under RCW 51.24.010, which provides a right of action for an injured workman against a third party "not in the same employ" for injuries due to the negligence or wrong of that third party. The Department is subrogated to Kelley's rights to the extent of payments it has made. Kelley alleges Wright was negligent in not providing a safety net for Robertson's workmen—a safety device which would have prevented Kelley's injuries and which he claims was required by an OSHA safety regulation.

In its contract with the owners of the project, Wright assumed sole responsibility for supervising and coordinating all aspects of the work. Wright agreed to be responsible for "initiating, maintaining and supervising all safety precautions and programs in connection with the work," and to "erect and maintain as required by existing conditions and progress of the work, all reasonable safeguards for safety and protection." Wright was obligated under this contract to appoint a safety director "whose duty shall be the prevention of accidents." Although Wright held weekly safety meetings attended by representatives of all the subcontractors on the job, it did not appoint a safety director.

H. H. Robertson also had responsibilities for safety under its contract with Wright. It agreed that "[a]dequate precautions must be taken at all times to insure safe conditions," and promised to "be responsible" for any violations

of the Construction Safety Act and/or the Occupational Safety and Health Act (OSHA). Robertson conducted its own safety meetings and maintained lifelines and safety belts for its employees.

There was testimony at trial that Robertson's workers did not find lifelines practical when they were laying decking because the lines made movement difficult and had to be so long that a worker could fall 39 feet before reaching the end of a line. A safety net, on the other hand, would have been both practical and effective, according to the testimony. The use of safety nets is customary in the construction industry when workers are more than 20 or 25 feet above the ground and other effective devices are impractical or otherwise not used. Plaintiff Kelley introduced into evidence an OSHA regulation applicable to all employers in the construction industry:

§ 1926.105 Safety nets.
(a) Safety nets shall be provided when work places are more than 25 feet above the ground or water surface, or other surfaces where the use of ladders, scaffolds, catch platforms, temporary floors, safety lines, or safety belts is impractical.

29 CFR § 1926.105(a). Plaintiff also introduced the Manual of Accident Prevention in Construction of the Associated General Contractors, of which Wright is a member. That manual provides:

Where it is not feasible to use safety belts and lifelines, lines, guarded platforms and scaffolds or temporary floors, safety nets should be suspended below the area where men are working more than twenty-five feet above a floor, ground or water.

The trial judge allowed Wright to show H. H. Robertson's negligence in failing to provide safeguards for its employees, but instructed the jury that Wright had a duty to comply with the OSHA regulation. The judge also refused to give Wright's proposed instruction intended to reduce any damages awarded against Wright by a percentage equal to the percentage of negligence attributable to

Robertson. Wright cites as error the trial court's failure to grant Wright's motion to dismiss, and the submission of the issue of liability to the jury. Wright also assigns error to the court's failure to grant its motion for judgment n.o.v. or, in the alternative, a new trial. These assignments raise the general issue of Wright's duty of care to the employee of a subcontractor. Related to this is Wright's assignment of error to the court's failure to give Wright's proposed alternative instruction regarding the OSHA regulation, placing the duty of compliance solely on Robertson. A separate issue is raised by Wright's assignment of error to the admission into evidence of the manual of regulations containing the OSHA regulation in question, and the accident prevention manual of the Associated General Contractors. Finally, Wright assigns error to the court's refusal to give its proposed instruction reducing the damages by Robertson's negligence.

In a cross appeal, plaintiff Kelley cites as error the reduction in his damage award because of the percentage of negligence attributed to him by the jury. We will discuss the issues in the above order.

## I
### WRIGHT'S DUTY OF CARE

Appellant's assignments of error to the trial court's failure to grant its motion to dismiss, motion for judgment n.o.v., and motion for a new trial all raise the general issue of whether it had a duty of care as general contractor to respondent Kelley, an employee of a subcontractor. Appellant disclaims any liability to respondent under common law or contract. The trial court instructed the jury that Wright had a duty of care to provide a safe place to work for employees of subcontractors, and also responsibility for safety precautions and programs. We hold that those instructions were proper. It is true the formal assignments of error and associated issues are not specifically directed to the instructions mentioned. RAP 10.3(a)(3) and (g). However, we prefer to reach the merits of the issues raised and

in so doing recognize that Wright had a duty of care to respondent and was liable for violations of its duty and of its responsibility for safety precautions. These conclusions require we uphold the denial of Wright's motion for summary judgment on the issue of liability.

Appellant Wright owed respondent a duty to take reasonable care to provide a safe place of work under the common law of tort, under RCW 49.16.030 (which was in effect at the time but has since been repealed), and under the contract between Wright and the owner. The evidence supported a jury finding that Wright was negligent in its duty, and the trial court did not err in denying the motions for judgment n.o.v. and a new trial.

The general rule at common law is that one who engages an independent contractor (here, a subcontractor) is not liable for injuries to employees of the independent contractor resulting from their work. *Fenimore v. Donald M. Drake Constr. Co.*, 87 Wn.2d 85, 549 P.2d 483 (1976); *Larson v. American Bridge Co.*, 40 Wash. 224, 82 P. 294 (1905). *See also* W. Prosser, *Handbook of the Law of Torts* 468 (4th ed. 1971) (hereinafter referred to as Prosser); 2 Restatement (Second) of Torts § 409 (1965). Respondent contends that Wright had a duty to provide adequate safety precautions for the subcontractor's employees under exceptions to this general rule, and we agree. These exceptions are based in common law, statute, and contractual assumption of duty.

A common law exception to the general rule of nonliability exists where the employer of the independent contractor, the general contractor in this case, retains control over some part of the work. The general then has a duty, within the scope of that control, to provide a safe place of work. *Fenimore v. Donald M. Drake Constr. Co., supra. See also Greenleaf v. Puget Sound Bridge & Dredging Co.*, 58 Wn.2d 647, 364 P.2d 796 (1961); 2 Restatement (Second) of Torts § 414 (1965). The test of control is not the actual interference with the work of the subcontractor, but the

right to exercise such control. *Fardig v. Reynolds,* 55 Wn.2d 540, 348 P.2d 661 (1960).

In this case Wright had a general supervisory and coordinating authority under its contract with the owner, not only for the work itself, but also for compliance with safety standards. Respondent maintains, and we agree, that Wright's general supervisory functions are sufficient to establish control over the work conditions of Robertson's employee Kelley. Wright had the right to require use of safety precautions such as lines or nets, or to halt dangerous work in adverse weather conditions. This authority alone was sufficient to establish appellant's duty to see that proper safety precautions were taken. In a case where the general contractor assumed by contract responsibilities for safety which were substantially the same as those assumed by Wright, the Fifth Circuit Court of Appeals found the general contractor retained sufficient control to establish liability for injuries to an employee of a subcontractor. *Smith v. United States,* 497 F.2d 500 (5th Cir. 1974).

Recognizing the authority a general contractor has to influence work conditions on a construction site, the Michigan Supreme Court has moved forthrightly to place ultimate responsibility for job safety in all common work areas on the general contractor. *Funk v. General Motors Corp.,* 392 Mich. 91, 220 N.W.2d 641 (1974). The court there noted the real threat of injury on a construction project, particularly the danger of falling. The best way to ensure that safety precautions are taken, the court reasoned, is to make the general contractor responsible for them.

> Placing ultimate responsibility on the general contractor for job safety in common work areas will, from a practical, economic standpoint, render it more likely that the various subcontractors being supervised by the general contractor will implement or that the general contractor will himself implement the necessary precautions and provide the necessary safety equipment in those areas.
>
> . . .

We regard it to be part of the business of a general contractor to assure that reasonable steps within its supervisory and coordinating authority are taken to guard against readily observable, avoidable dangers in common work areas which create a high degree of risk to a significant number of workmen.

*Funk v. General Motors Corp., supra* at 104. We believe the approach taken by the Michigan Supreme Court is sound. It recognizes the authority the general contractor has to require safety precautions on the jobsite. This authority over work conditions clearly falls within the rubric of "control" as an exception to the common–law rule of nonliability. The area in which respondent Kelley's accident occurred was one in which four different contractors had worked within a short period of time. Wright had supervisory and coordinating authority over them all. We hold appellant had a duty to see that proper safety precautions were taken in that area to provide the employees with a safe place of work.

Another ground for imposing a duty of care on Wright under the common law of tort is the inherently dangerous nature of the work respondent Kelley was doing. When work by its very nature creates some peculiar risk of injury, and the general contractor has reason to know of the inherent hazards of the work, the general contractor has a duty to take reasonable precautions against those hazards. 2 Restatement (Second) of Torts, *supra* at 427. *See also West v. Guy F. Atkinson Constr. Co.*, 251 Cal. App. 2d 296, 59 Cal. Rptr. 286 (1967). Work in which employees are required to walk over bare beams more than 25 feet above the ground, and sometimes even higher, is inherently dangerous. Wright was certainly aware of the hazards involved in such work, and therefore had a duty to take precautions against those hazards.

A third basis of Wright's duty to respondent Kelley is created by statute. A statute can create a nondelegable duty to furnish a safe place of work. *See* Prosser, *supra* at 470. RCW 49.16.030, applicable at the time of the accident,

imposed a duty on all employers to furnish a reasonably safe place of work, with reasonable safety devices, and to comply with state safety regulations. In *Bayne v. Todd Shipyards Corp.,* 88 Wn.2d 917, 568 P.2d 771 (1977) we construed this statute to place a duty on employers to all workers lawfully on the premises. We agree with respondent's contention that the statute created a nondelegable duty on the part of a general contractor to provide a safe place of work for employees of subcontractors on the jobsite. This duty extends to providing reasonable safety equipment where necessary.

Finally, we hold Wright assumed a nondelegable duty of care to employees of subcontractors in its contract with the owners. In article 10 of the contract Wright assumed responsibility "for initiating, maintaining and supervising all safety precautions and programs in connection with the work." It further agreed to comply with all applicable safety regulations and to maintain reasonable safeguards. On the question whether a nondelegable duty to employees of subcontractors is created by such contract provisions, existing authorities from other jurisdictions are not in complete agreement. Both Montana and California have refused to base liability of a general contractor to the employee of a subcontractor on a contractual assumption of duty. *See West v. Morrison–Knudsen Co.,* 451 F.2d 493 (9th Cir. 1971) and *Hensley v. United States,* 279 F. Supp. 548 (D. Mont. 1968) (construing Montana law); *West v. Guy F. Atkinson Constr. Co., supra.* Other courts though, have held a nondelegable duty on the part of the general contractor may be predicated on contract provisions imposing affirmative duties regarding safety measures. In *Smith v. United States, supra,* the court found the general contractor assumed affirmative duties for safety which established a basis for liability to an employee of a subcontractor in contract provisions similar to those involved in this case. The same contractual assumption of duty was found in *Presser v. Siesel Constr. Co.,* 19 Wis. 2d 54, 119 N.W.2d

405 (1963), where the general's contract required compliance with a safety manual. *See also Dunn v. Brown & Root, Inc.,* 455 F.2d 717 (8th Cir. 1972).

■ Although this court has not previously ruled on this question, our past decisions support the proposition that an affirmative duty assumed by contract may create a liability to persons not party to the contract, where failure to properly perform the duty results in injury to them. *See Sheridan v. Aetna Cas. & Sur. Co.,* 3 Wn.2d 423, 100 P.2d 1024 (1940); *Lough v. John Davis & Co.,* 30 Wash. 204, 70 P. 491 (1902).

In summary, then, we hold appellant Wright had a duty to provide a reasonably safe place of work and reasonable safety equipment under the principles of the common law of tort, under RCW 49.16.030, and under Wright's contract with the owners. Failure to comply with this duty is the basis of appellant's liability to respondent Kelley.

## II
### THE OSHA REGULATION

■ Appellant assigns error to the trial court's failure to give its proposed instruction placing responsibility for compliance with the OSHA safety net regulation solely on Kelley's employer, H. H. Robertson. The court's actual instruction was that responsibility for compliance with the regulation rested on Wright. We hold that appellant's proposed instruction was an erroneous statement of the law and was properly refused. We also hold the trial court did not err in instructing the jury it was Wright's responsibility to comply with the safety regulation.

■ The Occupational Safety and Health Act places a duty on all employers under the act to furnish a hazard–free place of employment and to comply with safety regulations promulgated pursuant to the statute. 29 U.S.C.A. § 654. The statute creates a government program to enforce compliance, but does not create a private cause of action for persons injured as a result of noncompliance. *See* 29 U.S.C.A. § 653(b)(4); *Jeter v. St. Regis Paper Co.,* 507 F.2d

973 (5th Cir. 1975); *Russell v. Bartley,* 494 F.2d 334 (6th Cir. 1974). OSHA and the regulations promulgated thereunder therefore do not create a duty to employees enforceable in a private cause of action. The question of duty to comply with the OSHA regulation at issue here is thus the question of the duty of a general contractor to comply with applicable safety regulations for the benefit of the employee of a subcontractor under our own state law. The first issue is whether the regulation is applicable to appellant Wright.

The OSHA mandate to comply with OSHA regulations applies to all employers. 29 U.S.C.A. § 654. The statute defines employers, however, only in terms of whether they engage in a business affecting commerce. It does not address the problem whether a general contractor must comply with OSHA regulations where the persons affected are not its own employees. *See* 29 U.S.C.A. § 652(5). The OSHA Review Commission charged with enforcement of the act has taken the position that a general contractor does not bear joint responsibility with a subcontractor for compliance with OSHA regulations, and at least one federal court has acquiesced in that decision. *Brennan v. Gilles & Cotting, Inc.,* 504 F.2d 1255 (4th Cir. 1974). In fact, H. H. Robertson, the subcontractor and employer of respondent Kelley, was cited for failure to comply with OSHA regulations by the OSHA representative investigating the accident, and not appellant Wright.

Other federal courts have taken a different approach to application of the regulations, however. They have applied the test of who has control over the work area in which a hazard exists to determine which employer is responsible for complying with the regulations. *See Brennan v. Occupational Safety & Health Review Comm'n,* 513 F.2d 1032 (2d Cir. 1975); *Anning–Johnson Co. v. Occupational Safety & Health Review Comm'n,* 516 F.2d 1081 (7th Cir. 1975). Under this approach Wright, as the employer in control of safety in the work area, was responsible for complying with the OSHA regulation.

Quite apart from responsibility under federal law is the fact that Wright voluntarily assumed the duty of complying with safety regulations in article 10 of its contract. The safety net regulation was applicable to the work being done by respondent. The trial court's instruction that Wright was responsible for compliance with the OSHA regulation was supported both by federal law and Wright's contract, which we have already said created a duty of care to respondent Kelley. Appellant's proposed instruction, placing the duty of compliance *solely* on H. H. Robertson, on the other hand, was an erroneous statement of the law and was properly refused. We hold there was no error in the trial court's handling of this matter.

Apart from the fact that the OSHA regulation is relevant to the appropriate standard of care, the parties raise the question whether violation of the regulation is negligence per se. This court held in *Bayne v. Todd Shipyards Corp., supra,* that an employer's failure to comply with work safety regulations promulgated pursuant to state statute was negligence per se. We reasoned that the applicable safety regulations were specifically authorized for the purpose of making safe the employees' place of work, and that employers and workmen alike had full and adequate notice of the existence of the regulations. We found it entirely appropriate to adopt the rule that violation of such standards of reasonable conduct, as embodied in administrative regulations, was negligence per se. The rationale of that case is equally applicable to violations of OSHA regulations. We hold that violation of the regulation would be negligence per se.

■ Appellant appears to argue, however, that as a matter of law there was no violation of the safety net regulation in this case. The regulation provides, as noted above:

§ 1926.105 Safety nets.
(a) Safety nets shall be provided when workplaces are more than 25 feet above the ground or water surface, or other surfaces where the use of ladders, scaffolds, catch

platforms, temporary floors, safety lines, or safety belts is impractical.

29 CFR § 1926.105(a). Appellant maintains first there was a temporary floor, *i.e.,* the temporary platform from which respondent fell. That platform, it is argued, made use of a net unnecessary. Given the small size of the platform and testimony at trial that workers had to walk on bare beams, the existence of a temporary floor within the meaning of the regulation was clearly a question of fact for the jury. Appellant also argues, though, that the regulation is to be interpreted to require nets only when belts, etc., are impractical. Thus, if belts, or any of the other listed safety devices are practical, nets need not be used—even if those other devices are not used. Under this interpretation no belts, lines, temporary flooring or nets would ever be required so long as an employer could show that belts or lines, for example, *would* be practical. This reading of the regulation would render it totally meaningless and must therefore be rejected. The Fifth Circuit Court of Appeals has already done so in *Brennan v. Southern Contractors Serv.,* 492 F.2d 498 (5th Cir. 1974).

We therefore hold the question of compliance with the regulation was properly submitted to the jury, and no error was made.

## III
### ADMISSION OF EXHIBITS 50 AND 72

Appellant assigns error to the admission of exhibits 50 and 72, which are safety manuals published by organizations of construction contractors. Exhibit 50 is the Manual of Accident Prevention in Construction of the Associated Contractors of America. Appellant objected to its admission on the ground that it is not relevant to the question of the duty of a general contractor to employees of a subcontractor. Exhibit 72 is a Safety Manual for the Northwest Chapter of the Associated General Contractors of America. It is a looseleaf binder containing federal safety regulations as published in the Federal Register. Not all of the regulations

contained in the manual are applicable to the project on which respondent Kelley was working. At trial appellant objected to admission of the entire manual, but agreed to admission of the regulations applicable to this case. Counsel apparently forgot to remove the pertinent sections from the binder and the entire manual went, unnoticed and without further objection, to the jury. Appellant now claims the jury was allowed to "rummage through" a lawbook. Appellant does not point to any particular sections of the manual which are prejudicial or misleading.

■ We do not find error in the admission of these manuals in their entirety. In *Nordstrom v. White Metal Rolling & Stamping Corp.*, 75 Wn.2d 629, 453 P.2d 619 (1969) we held that safety codes issued by private bodies, and government standards not having the force of law, are admissible where relevant, trustworthy and necessary to prove the matter contained therein. Under the holding of that case the manuals, clearly relevant to the issue of compliance with the standard of care in the industry, are admissible. Appellant has shown no prejudice deriving from counsel's collective failure to segregate the portions actually used at trial from the other pages in the safety manual. Nor is there any contention the manuals are not trustworthy. Certainly it was necessary to admit the manuals themselves rather than call their authors to the witness stand as experts to testify to the substance of the manuals' contents. The requirements of *Nordstrom* are therefore met, and there was no error.

### IV
### Appellant's Proposed Instruction 25
### and Special Verdict Form

Washington's comparative negligence statute, RCW 4.22-.010, provides that recovery in an action for damages due to negligence be diminished "in proportion to the percentage of negligence attributable to the party recovering." In this case the jury found respondent Kelley 10 percent negligent and the trial judge reduced the damages assessed by that

percentage. Appellant contends, however, that this procedure allows a negligent employer (immune from suit under the industrial insurance act) to benefit from his own wrong. The Department of Labor and Industries, or a self–insured employer, has a lien on an injured workman's recovery against a third party to the extent of benefits actually paid that workman under RCW 51.24.010. Therefore even if H. H. Robertson had been negligent to some degree, respondent Kelley's recovery is diminished only by his own negligence and the Department's lien on his recovery is completely undiminished. This, appellant claims, is how a negligent employer benefits from his own wrong.

Appellant's proposed alternative rule is that the words "party recovering" in RCW 4.22.010 should be construed to include a self–insured employer (or the Department of Labor and Industries) having a lien against the workman's recovery under the industrial insurance act. The negligence of the workman's employer would be attributed to the lienholder. Appellant's proposed instruction No. 25 with accompanying special verdict form would require the jury to attribute a percentage of negligence to H. H. Robertson, if such negligence were found, in order to allow the trial judge to reduce the recovery accordingly.

It should first be noted that appellant's proposed construction of the comparative negligence statute would not accomplish the purpose of reducing the Department's lien by the stipulated percentage. It would only reduce respondent's total recovery, against which the Department could still assert its lien in full. In fact, then, appellant calls for a construction of RCW 51.24.010 as well, allowing a reduction in the compensation lien itself.

The rule appellant proposes would directly contravene this court's prior holding with regard to the compensation lien provided by RCW 51.24.010. We held unanimously in *Courtright v. Sahlberg Equip., Inc.,* 88 Wn.2d 541, 563 P.2d 1257 (1977) that the compensation lien created by the industrial insurance act may not be reduced by the percentage of negligence attributable to the

injured employee. The rationale of that decision, equally applicable here, is that the amount of the lien is defined by the statute, which "gives no indication the department is entitled to any less rights than those set forth in the statute." *Courtright v. Sahlberg Equip., Inc., supra* at 544. Furthermore, the reduction proposed by appellant would contravene the policy of the industrial insurance act to provide the employer with complete immunity from liability in tort in exchange for mandatory participation in industrial insurance. *See Montoya v. Greenway Aluminum Co.*, 10 Wn. App. 630, 519 P.2d 22 (1975).

Nor do we see the wisdom of reducing respondent's recovery by a percentage of negligence attributable to H. H. Robertson. Such a construction of the comparative negligence statute would merely serve to penalize the injured workman for the negligence of his employer. Moreover, were we to compound the error by construing both the comparative negligence statute and the industrial insurance act as requested we would shift liability to the employer once again, in direct contravention of the policies of both statutes. *See Godfrey v. State,* 84 Wn.2d 959, 530 P.2d 630 (1975); *Montoya v. Greenway Aluminum Co., supra.* It should also be noted that since the State was not made a party to this action, the court below could not properly interpret the industrial insurance act or the comparative negligence statute so as to reduce the Department of Labor and Industries' lien. *See* CR 19.

We hold it was not error to reject appellant's proposed instruction No. 25.

### V
### Respondent's Cross Appeal

Respondent makes two assignments of error in his cross appeal. He first assigns error to the trial court's failure to direct a verdict on the issue of liability. Respondent makes no argument the alleged error was prejudicial and does not show what relief is needed. Furthermore respondent does

not show how the trial court erred, since there appear to be genuine issues of fact for the jury. We find no error.

 Respondent next contends his recovery should not be diminished because of his own contributory negligence. He argues the policy of safety regulations is to protect persons from their own negligence, and that reducing his damage recovery because of contributory negligence frustrates that purpose. The language of the comparative negligence statutes does not lend itself to the proposed construction. It is unambiguous in its application to an action "by any person . . . to recover damages caused by negligence resulting in . . . injury to person or property". RCW 4.22.010. No argument is made that the statute was intended to exclude from its application those actions where the negligence consisted in failure to comply with safety regulations. Nor are we persuaded that such a rule would be sound.

Respondent cites numerous authorities for the proposition that contributory negligence and assumption of risk should not be a bar to recovery where a workman has been injured due, in part, to the negligence of another. These authorities, however, all deal with contributory negligence as an absolute bar to recovery. Such an all or nothing result no longer obtains under our comparative negligence statute. *See Lyons v. Redding Constr. Co.,* 83 Wn.2d 86, 515 P.2d 821 (1973). The compelling reasons for ignoring contributory negligence found in the cases cited by respondent, therefore, do not exist here.

The judgment of the trial court is affirmed and respondent's cross appeal is dismissed.

WRIGHT, C.J., and ROSELLINI, HAMILTON, STAFFORD, UTTER, BRACHTENBACH, and DOLLIVER, JJ., concur.

HICKS, J. (concurring in part)—I concur with the majority except in a couple of instances. I am not in agreement with the opinion as it deals with the federal Occupational Safety and Health Act (OSHA), 29 U.S.C. 651 (1970). I particularly disagree with the holding "that violation of the

regulation would be negligence per se" for the reasons set forth in my dissenting views in *Bayne v. Todd Shipyards Corp.*, 88 Wn.2d 917, 922, 568 P.2d 771 (1977).

I subscribe to the idea that an injured workman should not be penalized in his recovery because of the fault of his employer. I do not, however, subscribe to the view that mandatory participation under this state's industrial insurance act provides an employer complete immunity from liability growing out of injury to his employee, regardless of circumstance or party. To the extent the majority opinion lends support to such a position, I am in disagreement.