[No. 32826-3-I.    Division One.    August 22, 1994.]

GILBERT H. MOEN COMPANY, *Appellant,* v. ISLAND
STEEL ERECTORS, INC., *Respondent.*

*Timothy Brewer,* for appellant.
*David J. Bierman* and *Alexander & Associates,* for respon-
dent.

BAKER, J. — A general contractor, Gilbert H. Moen
Company (Moen), settled a personal injury action brought
by an employee of its subcontractor, Island Steel Erectors,
Inc. (Island), and then claimed indemnity from Island. Moen
appeals from a summary judgment ruling which denied its
indemnity claim, and Island cross-appeals from a ruling
that it had a duty to defend Moen against the employee's
claim. We hold that Island had no duty to defend or

indemnify Moen and reverse that portion of the judgment granted in favor of Moen.

In November 1986 Island entered into a subcontract to do steel erection work on a construction project for which Moen was the general contractor. The subcontract included a provision obligating Island to "defend, indemnify, and hold [Moen] harmless from any and all claims . . . by third parties arising from . . . services performed . . . under this Subcontract . . . to the fullest extent permitted by law[.]"

While Island was performing its subcontract, one of its employees, Hotchkiss, fell and was injured. The fall was caused in part by Island's failure to comply with safety regulations regarding protection against falls. Hotchkiss sued Moen for its "[f]ailure to require its steel erector subcontractor [Island] to comply with safety regulations regarding the use of safety nets and tie-down harnesses." Hotchkiss did not sue his employer, Island, because it was immune under RCW Title 51. After Island refused Moen's defense tender, Moen settled with Hotchkiss and sued Island for indemnity. The trial court granted Island's motion for summary judgment on the issue of indemnity but allowed Moen to recover its costs of defense, finding that Island had a duty to defend Moen.

# I

■ The indemnity agreement was governed by RCW 4.24.115, which provides, in pertinent part, that an indemnity agreement between a general contractor and subcontractor for damages or injury:

> (2) Caused by or resulting from the concurrent negligence of (a) the indemnitee . . . and (b) the indemnitor . . . is valid and enforceable only to the extent of the indemnitor's negligence and only if the agreement specifically and expressly provides therefor, and may waive the indemnitor's immunity under . . . Title 51 RCW, only if the agreement specifically and expressly provides therefor and the waiver was mutually negotiated by the parties.

RCW 4.24.115. The parties agree that Island was required to indemnify Moen only for Island's own negligence. An agree-

ment which required Island to indemnify Moen for its negligence would be unenforceable under RCW 4.24.115. Therefore, Island had no duty to indemnify Moen unless Moen was somehow liable to Hotchkiss for Island's negligence.

## II

Moen's liability to Hotchkiss was premised on its duty as a general contractor to require compliance with safety regulations on the jobsite. In *Stute v. P.B.M.C., Inc.*, 114 Wn.2d 454, 788 P.2d 545 (1990) an employee of a subcontractor was injured when he fell off a roof. The employee sued the general contractor for its failure to provide required safety devices. *Stute*, 114 Wn.2d at 456. The Supreme Court held that the general contractor owed a duty to all employees on the jobsite to ensure compliance with safety regulations. *Stute*, 114 Wn.2d at 464.

Moen argues that *Stute* renders it liable for its subcontractor's negligence. This is not a correct reading of *Stute*. A general contractor is not vicariously liable for a subcontractor's negligence. Rather, the general contractor and subcontractor each owe distinct, separate duties to the subcontractor's employees.

> RCW 49.17.060 creates a twofold duty. Subsection (1) imposes a general duty on employers to protect only the employer's own employees from recognized hazards not covered by specific safety regulations. Subsection (2) imposes a specific duty to comply with [safety] regulations.

(Citation omitted.) *Stute*, 114 Wn.2d at 457. The second duty is owed by the general contractor to a subcontractor's employees. *Stute*, 114 Wn.2d at 464. Thus, Moen had a separate duty to ensure Hotchkiss had the required fall protection. If Moen violated that duty, it was liable for its own independent negligence. Island had no duty to defend or indemnify Moen on a claim based on Moen's independent negligence.

## III

We next consider whether Moen was jointly liable for Island's negligence. If so, the indemnity agreement would

require Island to indemnify to the extent *its own* negligence exposed Moen to liability.

Hotchkiss' personal injury action against Moen was governed by former RCW 4.22.070:

> (1) In all actions involving fault of more than one entity, the trier of fact shall determine the percentage of the total fault which is attributable to every entity which caused the claimant's damages, including the claimant or person suffering personal injury . . ., defendants, third-party defendants, entities released by the claimant, entities immune from liability to the claimant and entities with any other individual defense against the claimant. Judgment shall be entered against each defendant except those who have been released by the claimant or are immune from liability to the claimant or have prevailed on any other individual defense against the claimant in an amount which represents that party's proportionate share of the claimant's total damages. The liability of each defendant shall be several only and shall not be joint except:
>
> (a) A party shall be responsible for the fault of another person or for payment of the proportionate share of another party where both were acting in concert or when a person was acting as an agent or servant of the party.
>
> (b) If the trier of fact determines that the claimant or party suffering bodily injury . . . was not at fault, the defendants against whom judgment is entered shall be jointly and severally liable for the sum of their proportionate shares of the claimants total damages.[1]

"RCW 4.22.070(1) establishes several liability as the general rule, but retains joint and several liability under a limited number of circumstances[.]" *Anderson v. Seattle*, 123 Wn.2d 847, 850, 873 P.2d 489 (1994).

Moen was not faced with joint liability for Island's negligence. If the case had gone to trial, the trier of fact would have allocated fault separately to Moen for its negligent failure to ensure compliance with safety regulations, and to Island for

---

[1]RCW 4.22.070 was subsequently amended in response to *Clark v. Pacificorp*, 118 Wn.2d 167, 822 P.2d 162 (1991). New RCW 4.22.070 excludes entities immune under RCW Title 51 (workers' compensation) as entities to whom the trier of fact may attribute fault. This version applies to "all causes of action that the parties have not settled or in which judgment has not been entered prior to July 1, 1993." Laws of 1993, ch. 496, § 4. Because Moen and Hotchkiss settled the original action in the fall of 1991, these amendments do not apply to this appeal.

its negligence.[2] Under RCW 4.22.070(1), the trier of fact *shall* determine the percentage of the total fault attributable to every entity, including employers who are immune under Title 51 RCW. *See Clark v. Pacificorp*, 118 Wn.2d 167, 181, 822 P.2d 162 (1991). Each defendant would then be only severally liable for its share of fault, unless a statutory exception applied. RCW 4.22.070(1). If no exception applied, damages from fault attributable to an entity which was not a defendant against whom judgment was entered (Island) would not be collectable from a liable defendant (Moen). *See Anderson; Gerrard v. Craig*, 122 Wn.2d 288, 857 P.2d 1033 (1993); *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 294, 840 P.2d 860 (1992).

The exception under RCW 4.22. 070(1)(b) for fault-free claimants is not applicable here. Assuming a trier of fact would have found that Hotchkiss was not at fault, the exception would not apply because judgment could not be entered against Island. "[A] defendant against whom judgment is entered, as that term is used in RCW 4.22.070(1)(b), must be a named defendant in the case when the court enters its final judgment." *Anderson*, at 852. Judgment could not be entered against Island because it is immune under Title 51. "Judgment shall be entered against each defendant except those who . . . are immune from liability to the *claimant*[.]" (Italics ours.) RCW 4.22.070(1). Without a judgment against Island, Moen could not be jointly liable under RCW 4.22.070(1)(b) for Island's share of fault. *See Gerrard*, 122 Wn.2d at 298. Consequently, Moen was never exposed to joint liability for fault attributable to Island, and Island therefore had no duty to indemnify.

## IV

Moen contends that it and Island were acting in concert, as that term is used in RCW 4.22.070(1)(a). Under this exception, Moen would be jointly liable for any fault attributable to Island even if Island were not a defendant against whom

---

[2]Contrary to Moen's argument, *Stute* does not hold otherwise. The cause of action in *Stute* was filed before the effective date of RCW 4.22.070, and the opinion does not mention that statute.

judgment could be entered.[3] While no Washington cases discuss or apply this subsection, one commentator has produced a thorough analysis of joint and several liability and how the 1986 tort reform act was expected to limit it. Gregory C. Sisk, *Interpretation of the Statutory Modification of Joint and Several Liability: Resisting the Deconstruction of Tort Reform*, 16 U. Puget Sound L. Rev. 1 (1992). Sisk observes that joint and several liability has its roots in the concept of concerted action:

> In the early common law, to have acted in "concert" meant that the parties had acted to accomplish a wrongful purpose with a common design. . . .
>
> In this early period, even the existence of a conspiracy was not sufficient for imposition of joint liability on those who did not directly act together in effecting the injury. The concept of conspiracy was later used to *expand* joint and several liability "beyond the active wrongdoer to those who had merely planned, assisted or encouraged his acts." Subsequently, the doctrine of joint and several liability was further extended to concurrent tortfeasors, taking the rule well beyond the initial context of tortfeasors acting in "conscious concert."
>
> From the early common law, we can thus derive a definition of "acting in concert" as involving an intentional combination of conduct and requiring all tortfeasors to actively engage in the wrongful act. Given the legislature's apparent desire to restore the original understanding of joint and several liability, this strict and narrow understanding of concerted action should govern application of [RCW 4.22.070(1)(a)].

(Footnotes omitted.) Sisk, at 103-05. Under Sisk's analysis, the combined negligence of the various responsible parties at a construction site would not constitute action in concert.

> From both the early common law and the modern application of concerted action, the strict and narrow nature of the concept is manifest. *Cooperation in a lawful enterprise, which results in harm to a third person through negligence, does not rise to the high level of concerted activity.* Participation in a legitimate commercial relationship does not constitute acting in concert, even if a third person is harmed by the actions of one of the parties[.]

(Italics ours.) Sisk, at 107.

---

[3]This exception differs from the exception for fault-free claimants under RCW 4.22.070(1)(b) which, as discussed above, creates joint and several liability only between defendants in the action.

Moen objects that Sisk's analysis would restrict acting in concert to intentional torts, which are already not included in proportional fault. This is not an accurate assessment of Sisk's analysis. Action in concert requires only that the actors consciously act together in an unlawful manner. It does not require that they intend to harm the plaintiff. Sisk cites "highway drag-racing in which an innocent bystander is injured" as an example. Sisk, at 108.

Moen relies on *Elliott v. Barnes*, 32 Wn. App. 88, 645 P.2d 1136, *review denied*, 97 Wn.2d 1037 (1982), which defines acting in concert in terms of joint tortfeasors.

> Where distinct actors work in concert according to a general plan in committing a single tort they are joint tortfeasors. Joint tortfeasors must act in concert in committing the wrong or their acts, if independent of each other, must breach a joint duty and unite in causing a single injury. . . . [T]he following three elements must all exist: (1) A concert of action; (2) a unity of purpose or design; (3) two or more defendants working separately but to a common purpose and each acting with the knowledge and consent of the others.

(Citations omitted.) *Elliott*, 32 Wn. App. at 90-91. In *Elliott* the listing and selling agents acted together in misrepresenting the attributes of a piece of real property. Both had a duty to avoid disseminating false information to buyers. The reviewing court affirmed the trial court's determination that the agents were joint tortfeasors. *Elliott*, 32 Wn. App. at 91. *Elliott* was decided before the 1986 tort reform legislation, and should be relied on only with caution. It does not construe or apply RCW 4.22.070(1)(a), and the test it describes may represent the broad application of joint and several liability the statute was intended to curtail.[4]

We believe Sisk's narrow reading of RCW 4.22.070(1)(a) is necessary to effect the purpose of the 1986 tort reform act. As Sisk observes, the Legislature must have intended RCW

---

[4]Even if the test in *Elliott* applied, it does not lead to a finding that Moen and Island were acting in concert. Arguably, Moen and Island breached the same duty to protect Hotchkiss and produced a single injury. However, unity of purpose and common wrongful conduct are lacking. Nothing in the record suggests that Moen and Island had a plan to violate safety regulations or that they did so with each other's knowledge or consent.

4.22.070(1)(a) to return the concept of "acting in concert" to its original narrow interpretation. Sisk, at 102. If a broader interpretation were adopted, the exception for acting in concert would largely swallow the rule of several liability. Under this narrow interpretation, Moen and Island were not acting in concert.

## V

■ Moen contends the intent of the indemnity agreement was to shift liability to Island for claims based on Moen's nondelegable duty to insure compliance with safety regulations, when the loss was created by Island's negligence. Whether Moen bargained for this type of indemnity or not, such an agreement would be unenforceable. Under RCW 4.24.115, Island cannot indemnify Moen beyond Island's own negligence. Both RCW 4.24.115 and *Stute* indicate a clear public policy against allowing general contractors to delegate or otherwise avoid their responsibility to maintain a safe jobsite for all workers.

> [T]o further the purposes of WISHA to assure safe and healthful working conditions for every person working in Washington, RCW 49.17.010, we hold the general contractor should bear the primary responsibility for compliance with safety regulations because the general contractor's innate supervisory authority constitutes sufficient control over the workplace.

*Stute*, 114 Wn.2d at 464. An indemnity agreement which required a subcontractor to indemnify a general contractor for a breach of the general contractor's duty under *Stute* would allow the general contractor to avoid the economic consequences of its own negligence. This would accomplish indirectly what a general contractor cannot do directly — delegate its duty to ensure compliance with safety regulations to its subcontractors. Such an agreement would violate RCW 4.24.115.[5]

---

[5]Moen contends the indemnity agreement specifically waived Island's industrial insurance immunity so the indemnity agreement would apply to claims brought against Moen by Island's employees. The standard language in the indemnity agreement waiving Island's RCW Title 51 immunity is required by RCW 4.24.115(2). Such waivers are a leftover from before the 1986 tort reform act, when an employer could agree to indemnify another party for the other

Finally, Moen objects that this application of RCW 4.22.070 to the indemnity agreement renders the agreement superfluous. It is true that, where the plaintiff is an employee of the subcontractor, the indemnity agreement has no effect. However, this is because the general contractor is not liable for the negligence of the subcontractor, leaving nothing for the subcontractor to indemnify. Moen contends the Legislature did not intend RCW 4.24.115 and RCW 4.22.070 to invalidate general contractor-subcontractor indemnity agreements. Tort reform did not make these agreements invalid. Such agreements remain enforceable when a claim is for damage to property or when the injured plaintiff is not an employee of the negligent subcontractor. In these situations, the subcontractor is not immune under RCW Title 51 and can be sued and have judgment entered against it. The general contractor could then be jointly liable with the subcontractor (assuming the plaintiff was not at fault) under RCW 4.22.070(1)(b) and seek indemnity from the subcontractor.[6]

We affirm the trial court's judgment in favor of Island on the duty to indemnify.

## VI

The parties agree that the existence of a duty to defend depended on whether Island could ultimately be liable to indemnify Moen.

> The duty to defend and the duty to indemnify arise at different times in a tort proceeding. . . . [T]he duty to defend arises when the facts indicate that liability would eventually fall upon the indemnitor. The duty to indemnify arises when the

party's negligence (other than sole negligence) only if it expressly waived its immunity under RCW Title 51. *See Brown v. Prime Constr. Co.*, 102 Wn.2d 235, 684 P.2d 73 (1984). It is not clear whether these waivers have any further usefulness under RCW 4.22.070.

[6]However, under RCW 4.24.115, the general contractor can only be indemnified for the subcontractor's share of fault. This indemnity is no greater than the right of indemnity already provided by RCW 4.22.040(1). It may well be that the combined effect of RCW 4.22.040, RCW 4.22.070, and RCW 4.24.115 makes this type of indemnity agreement useless. This fact alone does not support a construction of the indemnity agreement which is unenforceable under RCW 4.24.115.

plaintiff in the underlying action prevails on facts that fall within coverage.

*George Sollitt Corp. v. Howard Chapman Plumbing & Heating, Inc.*, 67 Wn. App. 468, 475, 836 P.2d 851 (1992). Hotchkiss' complaint did not allege that Moen was liable for Island's negligence and therefore did not give rise to Island's duty to defend.[7] Given our resolution of the issue of indemnity, Hotchkiss could never have established facts which indicated Moen's liability for Island's negligence. Nevertheless, the trial court granted summary judgment for Island on indemnity but found that Island had a duty to defend. How it reached this result is not clear. This result does not follow from *Sollitt* and is not defended by either party on appeal.

We reverse the trial court's judgment on Island's duty to defend Moen and remand for entry of judgment in favor of Island.

WEBSTER, C.J., and GROSSE, J., concur.

Review granted at 125 Wn.2d 1020 (1995).

---

[7] If Hotchkiss had claimed that Moen was liable for Island's negligence, Island's duty to defend would have been fulfilled by bringing a motion for summary judgment to establish that Moen could not be liable for Island's share of fault.