[No. 62179-9.    En Banc.    March 7, 1996.]

GILBERT H. MOEN COMPANY, *Petitioner*, v. ISLAND
STEEL ERECTORS, INC., *Respondent*.

746

*Lembhard G. Howell, P.S.*, by *Lembhard G. Howell* and *Courtland T. Shafer*, for petitioner.

*Alexander & Associates*, by *David J. Bierman* and *Tracy R. Antley-Olander*, for respondent.

*Gary N. Bloom, Bryan P. Harnetiaux,* and *Daniel E. Huntington* on behalf of Washington State Trial Lawyers Association, amicus curiae.

TALMADGE, J. — The parties ask this court to determine the validity of an indemnification agreement in a construction contract pursuant to RCW 4.24.115. RCW 4.24.115 permits the enforcement of indemnification agreements involving concurrent negligence of parties in the construction setting. RCW 4.22.070, adopted in the same 1986 legislative session as amendments to RCW 4.24.115, provided for several liability in cases based on fault as the policy of the State of Washington. Notwithstanding RCW 4.22.070, we hold that an indemnification agreement negotiated pursuant to RCW 4.24.115 is valid and enforceable to the extent of the indemnitor's negligence in a case of concurrent negligence by the indemnitor and indemnitee. We reverse the Court of Appeals and remand this case to the King County Superior Court for trial.

## ISSUES

The issues raised by the parties are as follows:

1. Can Gilbert H. Moen Company (Moen) enforce an

indemnification agreement in which Island Steel Erectors, Inc. (Island) waived its employer immunity under RCW Title 51?

2. Can Moen enforce an indemnification agreement if it purports to shift liability to the extent of Island's negligence in a case of concurrent negligence, despite RCW 4.22.070 which adopts several liability in tort cases?

3. What is the extent of Island's liability to Moen, if any?

## FACTS

On October 27, 1986, the Renton School District awarded Moen a contract as general contractor for renovations to the Washington Vocational Technical Institute. In the contract, Moen assumed responsibility for construction and compliance with safety regulations. On November 20, 1986, Moen awarded the structural steel subcontract to Island. The subcontract included a two-page typeset form subcontract requiring Island to provide all of the steel erection work on the project, to comply with laws, regulations and provisions of the main contract, and to procure contractual liability coverage applicable to the indemnity provisions of the subcontract.

Island and Moen crossed out the paragraph on the form subcontract dealing with indemnification and executed a typewritten Indemnification Addendum in the following form:

> [Island] agrees to defend, indemnify, and hold [Moen] harmless from any and all claims, demands, losses and liabilities to or by third parties . . . connected with, services performed . . . [by Island's] employees to the fullest extent permitted by law and subject to the limitations provided below.

> [Island's] duty to indemnify [Moen] shall not apply to liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the sole negligence of [Moen or its] agent[s] or employees.

[Island's] duty to indemnify [Moen] for liability for damages arising out of bodily injury to persons or damage to property caused by or resulting from the concurrent negligence of (a) [Moen or its] agents or employees, and (b) [Island or its] agents or employees, shall apply only to the extent of negligence of [Island or its] agents or employees.

[Island] specifically and expressly waives any immunity that may be granted it under the Washington State Industrial Insurance Act, Title 51 RCW. Further, the indemnification obligation under this Subcontract shall not be limited in any way by any limitation on . . . benefits payable to or for any third party under the workers' compensation acts. . . .

[Island's] duty to defend, indemnify and hold [Moen] harmless shall include . . . [Moen's] personnel-related costs, reasonable attorneys' fees, court costs and all other claim-related expenses.

THE UNDERSIGNED HEREBY CERTIFY THAT THIS ADDENDUM HAS BEEN MUTUALLY NEGOTIATED.

Clerk's Papers at 97.

On April 27, 1987, Island's employee, John Hotchkiss, and a co-worker were bolting a horizontal steel beam to a vertical girder while standing on the beam three stories off the ground. The beam was suspended from a crane with a cable that was fastened to the middle of the beam. After Hotchkiss put in the bolts on one end of the beam, without fastening them, he went to the other end of the beam. Suddenly the bolts sheared, the beam see-sawed, and Hotchkiss fell 35 feet to the ground, severely injuring his spine. His co-worker managed to grab onto the vertical girder, and did not fall.

Hotchkiss reported the injury to the Department of Labor and Industries (the Department) the next day. The Department investigator found the accident was caused by the lack of safety equipment — a safety belt and lanyard, rigging and decking. The investigator testified Island, rather than Moen, was responsible for providing this fall protection equipment. The Department cited

Island for Washington Industrial Safety and Health Act (WISHA) violations: failure to have a safety program and failure to provide and require the use of specific fall-protection equipment (a safety belt and lanyard, rigging, and decking beneath the beams). Moen was not cited by the Department.

In 1989, Hotchkiss sued Moen, alleging Moen was negligent in its selection of inadequate bolts and its "[f]ailure to require its steel erector sub-contractor to comply with safety regulations regarding the use of safety nets and tie-down harnesses." Clerk's Papers at 35. The engineer who specified the bolts and the supplier of the bolts were also sued by Hotchkiss, but both were dismissed on separate summary judgment motions. Hotchkiss could not sue Island because of its employer immunity under RCW 51.04.010. Moen tendered the defense of Hotchkiss' suit to Island. Island rejected the tender.

In October 1991, Moen and Hotchkiss agreed to settle the claim for $680,000, of which Moen would pay $250,000 and the balance from the first $430,000 recovered from an action against Island.[1] Moen and Hotchkiss convened a hearing on the reasonableness of the settlement pursuant to RCW 4.22.060. Though Island was not a party to the lawsuit, Island submitted a brief and appeared at the hearing, challenging the propriety of such a hearing. At the hearing, the trial court asked Hotchkiss' counsel if the $680,000 amount of the settlement was "intended to only represent Moen's share of the fault." Counsel told the court he sought only a ruling that the amount was reasonable. The court again asked if the amount were reasonable "[a]s representing . . . damages attributable to actions of Moen," and counsel said, "That's right." Moen's attorney said he had nothing to add. The trial court found $680,000 was a reasonable settlement of the claim against

---

[1]The settlement agreement provided Moen would pay $250,000 to Hotchkiss and it could then recover the full $680,000 (plus expenses) in a suit against Island, or assign such a suit to Hotchkiss. Such suit could not be settled without Hotchkiss' consent. Hotchkiss released Moen, its employees, agents, and insurers from any claims related to the injury.

Moen, but stated its ruling was without prejudice to Island and was "not binding as a measure of damages in the future for the claim . . . against Island." Clerk's Papers at 78, 82-83.

On November 2, 1992, Moen filed suit against Island, seeking $680,000 plus costs, expenses and attorney fees, pursuant to the Indemnification Addendum. Moen did not assert common law indemnification or a statutory right to contribution as a basis for recovery. Island denied liability under the Indemnification Addendum, alleging Moen had paid Hotchkiss only for Moen's own independent negligence or fault. Island also asserted the reasonableness hearing was not binding upon it.

Island thereafter moved for summary judgment, arguing Island could not be liable to Moen where no allegation was made by Hotchkiss against Moen for Island's fault, and where Moen could not be liable in any event for Island's fault under the doctrine of several liability. RCW 4.22.070(1). Island argued Moen was sued only for its own, independent fault. Island also contended there was no joint and several liability because the two companies were not "acting in concert," RCW 4.22.070(1)(a), and Moen could not recover more than the $250,000 actually paid.

The trial court granted summary judgment dismissing the indemnification claim, finding the damages Moen paid were attributable only to its own conduct, although it ruled Moen could proceed with its claim for costs of defending Hotchkiss' suit because that claim did not arise from the sole negligence of Moen.

On appeal, the Court of Appeals affirmed the dismissal of the indemnification claim and reversed as to that part of the trial court ruling allowing Moen to proceed against Island for costs of defense. The Court of Appeals held Island was not obligated to indemnify or defend Moen because Moen had been liable only for its own independent negligence and could not have been jointly liable with Island under RCW 4.22.070. *Gilbert H. Moen Co. v. Island Steel Erectors, Inc.*, 75 Wn. App. 480, 878 P.2d 1246

(1994). The Court of Appeals also held Moen and Island could not have acted in concert because there was no evidence they "had a plan to violate safety regulations," or "consciously act[ed] together in an unlawful manner." *Moen*, 75 Wn. App. at 487. The Court of Appeals did not rule on whether Moen's recovery should be limited to $250,000 if the case went to trial. We granted review.

## ANALYSIS

### 1. The Indemnification Addendum Waived Island's Industrial Insurance Immunity

Island contends the Indemnification Addendum it signed is unenforceable in the face of its RCW Title 51 immunity as an employer. We disagree.

■ The Industrial Insurance Act grants immunity to employers from suits by employees for workplace injuries in exchange for "sure and certain relief" for employees suffering job-related injuries. *Brown v. Prime Constr. Co., Inc.*, 102 Wn.2d 235, 238, 684 P.2d 73 (1984); RCW 51.04.010; RCW 51.04.060.[2] However, Island waived its RCW Title 51 immunity in the Indemnification Addendum. Numerous cases allow such waivers to be enforced against an employer by a codefendant. This does not affect the employer's immunity as to suits by its own employees. *See, e.g., McDowell v. Austin Co.*, 105 Wn.2d 48, 710 P.2d 192 (1985) (indemnity clause enforceable under RCW 4.24.115 as to concurrent negligence); *Brown*, 102 Wn.2d at 238 (indemnity provisions may waive employer immunity); *Redford v. City of Seattle*, 94 Wn.2d 198, 203, 615 P.2d 1285 (1980) (affirming decision ordering trial despite contractor's claim that its indemnification of owner violated its RCW Title 51 immunity); *Montoya v. Greenway Aluminum Co.*, 10 Wn. App. 630, 519 P.2d

---

[2]RCW 51.04.010 abolishes jurisdiction of the courts over any civil action for a worker's personal injuries except as provided for in the title. Under RCW 51.04.060, neither the worker nor the employer may exempt himself or herself from the provisions of the title "by any contract, agreement, rule or regulation."

22 (1974) (waiver must be written); *Steinke v. Boeing Co.*, 525 F. Supp. 234 (D. Mont. 1981).

Courts enforce third party indemnification agreements despite the exclusivity of the Industrial Insurance Act because the employer voluntarily assumes liability in a contract; it is not imposed by tort law. *Redford*, 94 Wn.2d at 204. In a construction project, enforcing indemnification provisions protects the general contractor when sued by an injured worker "in cases in which the subcontractor could assert immunity." *George Sollitt Corp. v. Howard Chapman Plumbing & Heating, Inc.*, 67 Wn. App. 468, 474, 836 P.2d 851 (1992). Enforcing such indemnification provisions allows contractors to allocate "responsibility to purchase insurance" according to their negotiated allocation of risk and potential liabilities. *McDowell*, 105 Wn.2d at 54.

> There are sound policy reasons for enforcing indemnification agreements:
>
> We hold parties to their contracts. If tort and contract remedies were allowed to overlap, certainty and predictability in allocating risk would decrease and impede future business activity. The construction industry in particular would suffer, for it is in this industry that we see most clearly the importance of the precise allocation of risk as secured by contract. The fees charges by architects, engineers, contractors, developers, vendors, and so on are founded on their expected liability exposure as bargained and provided for in the contract.

*Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. 1*, 124 Wn.2d 816, 826-27, 881 P.2d 986 (1994).

The Legislature has specifically limited and recognized the enforceability of indemnification provisions in construction contracts. Prior to the 1986 Tort Reform Act (the Act), RCW 4.24.115 precluded indemnification by the indemnitor against the sole negligence of the indemnitee in construction contracts. In the Act, the Legislature added subsection (2) to RCW 4.24.115, which specifically

permits the enforcement of contracts to indemnify against loss occasioned by concurrent negligence.[3] This subsection states such agreements are "valid and enforceable only to the extent of the indemnitor's negligence and only if the agreement specifically and expressly provides therefor." It further states the indemnitor "may waive . . . immunity under industrial insurance" only if the agreement specifically and expressly provides, and the waiver was mutually negotiated.[4]

■ Island's argument based upon its employer immunity is controlled by RCW 4.24.115(2). The Indemnification Addendum complies with RCW 4.24.115(2). It specifically and expressly provides for the waiver of employer immunity, and provides Island will indemnify Moen, where Moen and Island are concurrently negligent, to the extent of Island's negligence. It also certifies the Indemnification Addendum was mutually negotiated. Because the Indemnification Addendum complies with RCW 4.24.115(2), it is valid and enforceable, but only to the extent Island's negligence caused Hotchkiss' injuries. RCW

[3]"[I]f two individuals commit *independent acts of negligence* which *concur* to produce the proximate cause of an injury to a third person, they are to be regarded as concurrent tort-feasors. . . ." *Mason v. Bitton*, 85 Wn.2d 321, 326, 534 P.2d 1360 (1975). *See also Seattle First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wn.2d 230, 235, 588 P.2d 1308 (1978).

[4]RCW 4.24.115 presently states:

A covenant, promise, agreement or understanding in, or in connection with or collateral to, a contract . . . relative to the construction . . . of, any building . . . purporting to indemnify against liability for damages arising out of bodily injury to persons or damage to property:

(1) Caused by or resulting from the sole negligence of the indemnitee, his agents or employees is against public policy and is void and unenforceable;

(2) Caused by or resulting from the concurrent negligence of (a) the indemnitee or the indemnitee's agents or employees, and (b) the indemnitor or the indemnitor's agents or employees, is valid and enforceable only to the extent of the indemnitor's negligence and only if the agreement specifically and expressly provides therefor, and may waive the indemnitor's immunity under industrial insurance, Title 51 RCW, only if the agreement specifically and expressly provides therefor and the waiver was mutually negotiated by the parties. This subsection applies to agreements entered into after June 11, 1986.

4.24.115(2). We hold Island to the contract it negotiated with Moen.

## 2. The Indemnification Addendum Should Be Enforced

The crux of this case is whether Hotchkiss' injuries were caused by any negligence of Island or by Moen's sole negligence.

There was substantial evidence that Hotchkiss' fall resulted from the failure to require rigging and a lanyard, or to put up a safety net, particularly when Island was cited for WISHA violations. Island promised to comply with safety regulations and to supervise the steel erection portion of the project. Island had a duty to provide a safe workplace and to comply with safety regulations under RCW 49.17.060 and WAC 296-155-040. While not negligence per se, Island's four violations of the safety regulations are strong evidence of its negligence. RCW 5.40.050.

Given the evidence of Island's negligence, Moen presented sufficient evidence to avoid summary judgment on its indemnification claim pursuant to the terms of the Indemnification Addendum. The Indemnification Addendum creates a duty to defend and indemnify where Island's negligence helped cause an injury giving rise to liability. The Indemnification Addendum imposes upon Island the duty to indemnify Moen "for liability for damages arising out of bodily injury . . . caused by or resulting from the concurrent negligence" of Moen and Island. Clerk's Papers at 97.

The courts below and Island concluded summary judgment was proper because, as a matter of law, Moen's liability was only for its own negligence. The Court of Appeals gave a number of reasons for so holding: Moen was only liable for, and only paid for, its own negligence, because as the general contractor it had a nondelegable duty to ensure compliance with safety regulations. Under the Act, Moen only had several liability for its concurrent negligence with Island. *Moen*, 75 Wn. App. at 483-85.

These arguments are unpersuasive in light of the explicit terms of RCW 4.24.115(2) and the Indemnification Addendum negotiated by the parties.

### a. Moen and Island Both Had the Duty To Comply With Safety Regulations

■ The Court of Appeals mistakenly concluded that Moen was solely negligent for Hotchkiss' injuries, focusing on the nondelegable duty of the general contractor. *Moen*, 75 Wn. App. at 488. The court overlooked the negligence of Island in failing to provide the equipment and devices required under the regulations to protect workers from falling. It is well settled that *both* a general contractor and a subcontractor are responsible to ensure compliance with safety regulations within their areas of control. The general contractor and a subcontractor each owe distinct duties to workers with respect to workplace safety.

At common law, a general contractor had no duty to the employees of its independent subcontractor, unless the general contractor retained control over part of the work. *Kelley v. Howard S. Wright Constr. Co.*, 90 Wn.2d 323, 330, 582 P.2d 500 (1978). In *Kelley*, we explicitly held a general contractor had a nondelegable duty under the then-existing workplace safety statute to ensure the safety of all workers on a jobsite. *Kelley*, 90 Wn.2d at 332-33. In 1990, we again held a general contractor owed a duty to all employees at a worksite to comply with, or ensure compliance with, safety regulations under WISHA. RCW 49.17. *Stute v. P.B.M.C., Inc.*, 114 Wn.2d 454, 464, 788 P.2d 545 (1990). This duty is based upon the general contractor's "innate supervisory authority" that constitutes "per se control over the workplace," *Stute*, 114 Wn.2d at 464, and upon the wording of RCW 49.17.060 and WAC 296-155-040, *Stute*, 114 Wn.2d at 457-60.[5]

The Court of Appeals refers to Moen's "distinct, sepa-

---

[5]RCW 49.17.060 provides "Each employer: (1) Shall furnish to each of his employees a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to his employees . . . and (2) Shall comply with the rules, regulations, and orders promulgated under this chapter." WAC 296-155-040 provides in part "(1) Each employer shall furnish to each employee

rate duties to the subcontractor's employees," and Moen's "independent negligence." *Moen*, at 483. The Court of Appeals seems to have read *Stute* to hold the subcontractor does not have the duty to comply with safety regulations and provide a safe workplace. But nothing in the relevant statutes, regulations or *Stute* indicates the subcontractor is relieved of its duty to comply with safety regulations and provide a safe workplace. Although the duties owed by Moen and Island to workers for workplace safety are distinct, they are concurrent responsibilities to workers. Moen's "independent negligence" should not be equated with "sole negligence."

The subcontractor, despite the general contractor's workplace safety duty, retains concurrent responsibility to meet workplace safety standards in the areas under its control. This duty is imposed on the subcontractor by RCW 49.17.060 and WAC 296-155-040 (the subcontractor is an employer within the ambit of those provisions),[6] as well as express promises in the subcontract to comply with regulations and supervise the work. This duty is also necessarily imposed upon the subcontractor under the reasoning of *Stute* that the right to control gives rise to the duty to comply with regulations. In recognition that the duty to observe safety standards is a shared duty, *Stute* referred to the general contractor's duty in this regard as a "prime" or "primary" responsibility. *Stute*, 114 Wn.2d at 463-64. However, each employer must comply with WISHA requirements. *Goucher v. J.R. Simplot Co.*, 104 Wn.2d 662, 709 P.2d 774 (1985); *Adkins v. Aluminum Co. of Am.*, 110 Wn.2d 128, 153-54, 750 P.2d 1257, 756 P.2d 142 (1988); *see also Weinert v. Bronco Nat'l Co.*, 58 Wn. App. 692, 696,

a place of employment free from recognized hazards that are causing or likely to cause serious injury or death to employees. (2) Every employer shall require safety devices, furnish safeguards, and shall adopt and use practices, methods, operations and processes which are reasonably adequate to render such employment and place of employment safe. Every employer shall do everything reasonably necessary to protect the life and safety of employees." The safety regulations covering construction work are detailed and comprehensive. *See* WAC 296-155, "Safety Standards for Construction Work."

[6]*See* RCW 49.17.020(3) and WAC 296-155-012(12) (definitions of "employer").

795 P.2d 1167 (1990) (duty to comply with safety regulations applies to any party with supervisory authority on a worksite).

In *George Sollitt Corp. v. Howard Chapman Plumbing & Heating, Inc.*, 67 Wn. App. 468, 836 P.2d 851 (1992), the Court of Appeals addressed a factual pattern analogous to that present here, although the case arose prior to the 1986 Tort Reform Act. The court held an indemnification agreement was enforceable because both a general contractor and a subcontractor were concurrently negligent as to a workplace injury. The court reasoned that even with the adoption of RCW 4.22.070, the case was not one of sole negligence but concurrent negligence. "Although [*Stute*] states that the general contractor is liable for the enforcement of WISHA regulations, it does not remove responsibility from the employer and other subcontractors. Thus, under *Stute* we still have concurrent negligence, not sole negligence." *Sollitt*, 67 Wn. App. at 473. The duties of the general and subcontractor are concurrent. The analysis of the Court of Appeals in *Sollitt* remains the correct reading of the law after the 1986 Tort Reform Act. Accordingly, while Moen as the general contractor may not delegate away its general duty to ensure safety on the jobsite, Island is not thereby relieved of its concurrent workplace safety duty.

An appellate court reviews an order on summary judgment by conducting the same inquiry as the trial court. *Havens v. C & D Plastics, Inc.*, 124 Wn.2d 158, 176-77, 876 P.2d 435 (1994); *Young v. Key Pharmaceuticals, Inc.*, 112 Wn.2d 216, 225-26, 770 P.2d 182 (1989). To grant a summary judgment motion, the evidence, admissions and pleadings must show there is no genuine issue as to a material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c).

In the present case, there is a question of fact for the trier of fact as to the negligence of Moen and Island, particularly where Island was cited for workplace safety

violations. *Ruff v. County of King*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995) (negligence is ordinarily a question of fact). Where there was evidence Hotchkiss' injuries were the result of violations of safety regulations, and the injuries resulted from the concurrent negligence of Moen and Island, summary judgment against Moen was improper.

   b.   RCW 4.22.070 Does Not Make RCW 4.24.115(2) Superfluous

Island argues, and the Court of Appeals agreed, as a matter of law, Moen could not have paid for Island's negligence because under RCW 4.22.070 Moen and Island would have been severally liable in a (hypothetical) case against both of them brought by Hotchkiss. "Moen was never exposed to joint liability for fault attributable to Island, and Island therefore had no duty to indemnify." *Moen*, 75 Wn. App. at 485. In other words, had Hotchkiss' case gone to trial, Moen would have paid for its own liability only, and could have asked the jury to allocate fault to Island, even though Island, as Hotchkiss' employer, was immune (the "empty chair" defense).[7] A corollary argument advanced by Island is that Moen obviously paid for its sole negligence because of statements made at the reasonableness hearing by Hotchkiss' counsel allegedly to the effect the Moen payment was for Moen's own liability. Neither contention is persuasive.

   ■■■ The flaw in Island's reasoning is RCW 4.22.070 does not control here. Rather, RCW 4.24.115(2) controls this case and provides the Indemnification Addendum, premised on concurrent negligence, is valid and enforceable. RCW 4.22.070 does not apply to a contractual indemnification action. By its terms, it applies only to actions involving fault as defined in RCW 4.22.015. RCW

---

[7]RCW 4.22.070(1) was amended in 1993 in response to *Clark v. Pacificorp*, 118 Wn.2d 167, 822 P.2d 162 (1991), to exclude an employer with immunity under RCW Title 51 as an entity against which fault could be assessed. In other words, it is now clear an entity in Moen's position could not use the empty chair defense, and would be liable for the employer's share of the fault. The amendment does not apply to this appeal because Moen and Hotchkiss settled in 1991. *Moen*, 75 Wn. App. at 484 n.1.

4.22.070 does not even purport to derogate from Moen's and Island's ability to choose their own allocation of responsibility for injuries resulting from their concurrent negligence.

RCW 4.22.070 may not properly be interpreted to alter the result that would be achieved under RCW 4.24.115(2). Although RCW 4.22.070 had the effect of generally abolishing joint and several liability for concurrent negligence, the Legislature enacted RCW 4.24.115(2) in the same 1986 legislation. That subsection specifically refers to indemnification agreements in construction contracts; it expressly makes them "valid and enforceable" — when based upon concurrent negligence — to the extent of the indemnitor's negligence. It also expressly validates waivers of an employer's Title 51 immunity, indicating an intent to encompass indemnification for injuries to the indemnitor's employees. Therefore, while the Act generally abolished joint and several liability in tort cases where concurrent negligence was present, it specifically allowed the enforcement of indemnification contracts where the parties were concurrently negligent "to the extent of the indemnitor's negligence."

To the extent the two sections are viewed as conflicting, RCW 4.24.115(2) prevails because it addresses the specific facts present here. More important, it must prevail or else it would be rendered meaningless, together with all indemnification agreements similar to the one involved here. If a general contractor and a subcontractor are severally liable to an injured employee, there would be no need for an indemnification agreement at all on any project. Under such an indemnification agreement, the subcontractor will never be required to indemnify the general contractor, if the reasoning of Island and the Court of Appeals is upheld. *See Union Pac. R.R. Co. v. Ross Transfer Co.*, 64 Wn.2d 486, 490, 392 P.2d 450 (1964) ("unless the indemnity section of the contract before us be construed to encompass situations wherein both the indemnitee and the indemnitor are negligent, the contractual provision is a useless gesture").

The Court of Appeals concedes its decision renders RCW 4.24.115(2) and the parties' Indemnification Addendum meaningless whenever an injured employee sues the general contractor. *Moen*, 75 Wn. App. at 489. It further states the industrial insurance immunity waivers referred to in RCW 4.24.115(2) are a "leftover," and it "is not clear whether these waivers have any further usefulness under RCW 4.22.070." *Id.* at 488 n.5.

After this court's decision in *Clark*, and subsequent legislative amendments to RCW 4.22.070 in Laws of 1993, ch. 496, § 1, this generalization is no longer entirely accurate. Under the 1993 amendments, the "empty chair" defense is no longer available to a general contractor sued by the employee of a subcontractor.

As a result of this change, if the view of the Court of Appeals were to prevail, a general contractor's exposure for injuries to employees of a subcontractor would be increased substantially. The general contractor would be fully liable for the losses suffered by an employee of a subcontractor injured at a construction site under the nondelegable duty of *Kelley*. Given its employer immunity under RCW Title 51, a subcontractor could never be sued by its employee. Moreover, after the 1993 amendments to RCW 4.22.070(1), a general contractor could no longer have the jury apportion any part of the liability to the subcontractor. If a general contractor could no longer shift liability to a subcontractor using an indemnification agreement pursuant to RCW 4.24.115, the general contractor would pay for any fault of the subcontractor, a result wholly inconsistent with our prior case law. *See* Steven P. Soha, *A Study in Juristic Realism: The Historical Development and Interpretation of Construction Industry Indemnification Clauses in Washington*, 10 U. PUGET SOUND L. REV. 51, 101 (1986) (1986 amendments constitute "express legislative approval" of case law). This is inconsistent with the intent of RCW 4.22.070 and 4.24.115 to more fully apportion fault between the responsible parties and ensure a party generally will not have to bear financial responsibility for the fault of another.

The references to employer immunity waivers in RCW 4.24.115(2) must be taken to indicate RCW 4.24.115(2) is intended precisely to cover the case of an employee injured on a construction site when the general contractor and its subcontractor enter into an indemnification agreement. An interpretation of RCW 4.22.070 rendering RCW 4.24.115(2), another section of the same 1986 Tort Reform Act, largely superfluous violates the imperative to construe statutes so as to give effect to all words, clauses and sentences of the Legislature's handiwork. *Cox v. Helenius*, 103 Wn.2d 383, 387-88, 693 P.2d 683 (1985). The Legislature's 1986 amendment to RCW 4.24.115 provided that appropriate indemnification agreements in the construction industry are "valid and enforceable." We hold RCW 4.24.115(2) is not superseded by RCW 4.22.070.[8]

▇▇▇▇ Island also contends a statement at the reasonableness hearing made by Hotchkiss' counsel evidenced that Moen paid only for Moen's share of proportionate fault.[9] First, such a reasonableness hearing was unnecessary here. Moen was the only defendant. Reasonableness hearings are generally required only in actions based on fault because statutory contribution is implicated, and not in actions based on contract. *Zamora v. Mobil Oil Corp.*, 104 Wn.2d 211, 704 P.2d 591 (1985) (participation of joint tortfeasor in settlement agreement does not invalidate contractual indemnity rights between that tortfeasor and others). Second, Island's argument is inconsistent with the reality of this type of case. Moen's payment to Hotchkiss

---

[8]Moen did not assert a contribution claim based upon joint liability for "acting in concert." The only reason the parties in this case have addressed the question of the proper definition of "acting in concert" is because Moen argues, and the Court of Appeals disagreed, that Moen could have been liable on tort principles apart from the Indemnification Addendum for Island's fault because there was joint and several liability based upon the acting in concert exception in RCW 4.22.070(1)(a). We do not reach this issue of liability based on tort principles where a contract for indemnification exists between the parties.

[9]Island further avers the judge at the settlement hearing specifically ruled that the settlement sum was for Moen's own share of liability. This is so so; the judge specifically ruled the reasonableness hearing was not binding on Island and did not evaluate the relative shares of fault of Moen or Island, or rule whether those shares were distinct. Clerk's Papers at 82-83.

discharged Hotchkiss' claims against *all* defendants. The settlement required Hotchkiss to release Moen, its employees, agents, and insurers from all liability, and Hotchkiss' complaint presumably was dismissed with prejudice. Because Island was immune from liability to Hotchkiss under RCW Title 51 as his employer, Island would never be obliged to pay anything to Hotchkiss. Moen's payment, like that of *any* third party tortfeasor to an injured worker, would, if Island were correct, be deemed to be a payment for sole negligence and would render indemnification a nullity. This is inconsistent with the policy of the statute. We hold Moen's settlement with Hotchkiss did not conclusively establish that Moen's payment was for its sole negligence.

### 3. Extent of Island's Liability

Island claims any recovery by Moen must be limited to $250,000, the amount Moen actually paid Hotchkiss. Moen points out, on the other hand, the reasonableness hearing judge ruled Hotchkiss' injuries were worth $680,000. We do not reach the question of the extent of Island's obligation to indemnify Moen under the Indemnification Addendum. We do not determine whether it is limited to the $250,000 already paid by Moen or whether it includes the $430,000 Moen agreed to recover and pay over to Hotchkiss. Island is free to present this argument on remand to the trial court, which has not yet ruled on it. By the terms of the Hotchkiss-Moen settlement, the upper limit on Moen's recovery from Island was the principal sum of $680,000.

On remand, Moen will have to prove its negligence and that of Island caused Hotchkiss' injuries. Under Washington law, an indemnitee who settles does not automatically recover the amount of the settlement from the indemnitor but must prove it was in fact liable for the amount of the settlement under the "actual liability" stan-

dard.[10] *Nelson v. Sponberg*, 51 Wn.2d 371, 376, 318 P.2d 951 (1957) (citations omitted); *United Boatbuilders, Inc. v. Tempo Prods. Co.*, 1 Wn. App. 177, 180-81, 459 P.2d 958 (1969); *see also* 42 C.J.S. INDEMNITY § 19 (distinguishing indemnity against loss and against liability); 41 AM. JUR. 2D INDEMNITY § 30 (actual damage); 41 AM. JUR. 2D INDEMNITY § 33 (actual liability). The actual liability rule fully protects Island from the danger that the Moen-Hotchkiss settlement was a "sweetheart deal." Thus, on remand, the trier of fact must determine if Moen and Island were negligent and such negligence caused Hotchkiss' injuries. The trier of fact must also decide the extent to which the negligence of Moen and Island (and Hotchkiss, if he was negligent) respectively contributed to Hotchkiss' damages as Island may only indemnify Moen to the extent of Island's negligence under RCW 4.24.115. Finally, the trier of fact must decide the total damages experienced by Hotchkiss.

## CONCLUSION

The construction industry is highly structured by contractual relationships. This court has historically deferred to such contractual relationships in lieu of adopting new tort principles in this field. The allocation of responsibility for workplace injuries by contract is consistent with this historical policy and was expressly approved by the Legislature. Soha, *A Study in Juristic Realism*, 10 U. PUGET L. REV. at 101. The 1986 Tort Reform Act does not compel another conclusion.

The parties here negotiated the Indemnification Addendum. Island agreed to provide liability insurance coverage to Moen consistent with the Indemnification Ad-

---

[10]This is analogous to the rule in statutory contribution claims that no right of contribution arises between parties unless those parties are liable for the underlying injury of the plaintiff. *All-Pure Chem. Co. v. White*, 127 Wn.2d 1, 4, 896 P.2d 697 (1995). Because Island enjoys its employer immunity for claims by Hotchkiss, it cannot be "liable" to Hotchkiss. Island's waiver of this immunity, however, operates only to permit the indemnification action against it by Moen.

dendum. The parties' Indemnification Addendum is enforceable, under RCW 4.24.115, according to its terms.

As there are fact questions about the parties' concurrent negligence and damages, the decision of the Court of Appeals is reversed and the case remanded for trial.[11]

DURHAM, C.J., DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, and ALEXANDER, JJ., and PEKELIS, J. Pro Tem., concur.

---

[11]In light of the court's disposition of the issues in this case, we do not decide the numerous motions on appeal filed by the parties.