IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| JOEL THOEN and STEPHANIE THOEN, as husband and wife, | ) ) ) | No. 79123-1-I |
| Appellant, | ) ) ) | |
| v. | ) ) | |
| CDK CONSTRUCTION SERVICES, INC., a Washington corporation, | ) ) ) | UNPUBLISHED OPINION |
| Respondent. | ) ) ) | FILED: March 23, 2020 |

VERELLEN, J. — A general contractor can be directly liable for injuries to a subcontractor's employee on a construction site under two theories. Based on its innate supervisory authority over the entire construction site, the general contractor has a statutory duty to provide a safe worksite for all workers by ensuring compliance with the Washington Industrial Safety and Health Act (WISHA).[1] "[N]o analysis of whether the general contractor retained control is necessary."[2] A general contractor also owes a common law duty to provide a safe worksite so long as it has the right to exercise control over the site. Its "'general

---

[1] Ch. 49.17 RCW.

[2] Vargas v. Inland Washington, LLC, 194 Wn.2d 720, 736, 452 P.3d 1205 (2019).

supervisory functions are sufficient to establish control.'"[3] Neither duty is predicated on the general contractor actually exercising control over the subcontractor or the subcontractor's employees. Neither duty is limited to common work areas.

Because the special verdict form and jury instructions prejudiced Joel Thoen by conditioning any finding of liability on general contractor CDK Construction Services, Inc. having exercised control over Thoen's work as an employee of a subcontractor, a new trial is required.

We reverse.

## FACTS

Thoen worked for American Railworks (AmRail), a specialized construction subcontractor that installs deck rails. General contractor CDK hired AmRail to install rails on the deck of a golf clubhouse. Because the deck was 11 feet above the ground, workers on the deck were supposed to wear fall protection equipment.

Thoen, his boss, and another AmRail employee arrived on the job site to install the rails, but they forgot fall protection equipment. Thoen's boss decided he would go on the deck to set the rails while Thoen and the other employee would assist from ladders. Thoen's boss discussed this plan with CDK's site supervisor. The site supervisor gave them a single fall protection harness to do the work, although he had more available.

---

[3] Id. at 731 (quoting Kelley v. Howard S. Wright Const. Co., 90 Wn.2d 323, 331, 582 P.2d 500 (1978)).

While installing the rails, Thoen's boss was handling one large, heavy rail and asked for help. Thoen climbed up to help without any fall protection equipment. He fell off the deck, landing on his head and back on asphalt.

Thoen filed suit against CDK and alleged that it failed to provide a safe work site, first, because it failed to comply with safety regulations requiring a written fall protection plan for the work site, and second, because it failed to exercise its authority to provide a safe work site. Trial was held in September of 2018.

The court approved a special verdict form asking the jury to determine, as a predicate question to determining liability, whether CDK "exercise[d] control over [Thoen's] work."[4] The special verdict form directed the jury not to answer any further questions if it decided that CDK did not exercise control over Thoen's work. The court instructed the jury that it had to determine whether CDK "retained control over American Railworks, LLC's work site" to find it liable.[5] The court also instructed the jury that CDK had a duty "to provide a safe place of work, within common areas it controls."[6] Because the jury answered "no" to the predicate question on the special verdict form, it answered no other questions. The court entered judgment for CDK.

Thoen appeals.

---

[4] Clerk's Papers (CP) at 4402.

[5] CP at 4422 (jury instruction 12); see CP at 4427 (jury instruction 16 stating that CDK was not liable unless it "retained actual control or the legal right of control" over Thoen's work).

[6] CP at 4424 (jury instruction 13).

ANALYSIS

We review de novo whether jury instructions and special verdict forms correctly stated the law.[7] Jury instructions are considered in their entirety and are sufficient if they "(1) permit each party to argue his theory of the case; (2) are not misleading; and (3) when read as a whole, properly inform the trier of fact of the applicable law."[8] A special verdict form is inadequate if it "cloud[s] the jury's vantage point of the contested issues."[9] It is reversible error when the jury instructions or the special verdict form misstate the law and prejudice a party.[10]

Four months after the parties filed their briefs in this appeal, our Supreme Court decided Vargas v. Inland Washington, LLC, which is dispositive of many of the issues here.[11] We asked counsel for both parties to be prepared at oral argument to discuss Vargas's impact on this case.

---

[7] Afoa v. Port of Seattle, 191 Wn.2d 110, 119, 421 P.3d 903 (2018) (Afoa II); Canfield v. Clark, 196 Wn. App. 191, 199, 385 P.3d 156 (2016). CDK argues we should conduct review under an abuse of discretion standard because "determining whether and to what extent a duty of care exists depends upon a factual determination." Resp't's Br. at 14. This misunderstands the issues on appeal. Because it is undisputed that CDK was the general contractor who hired AmRail and its employee, Thoen, we consider the purely legal issue of whether the jury instructions and special verdict form correctly stated the law governing the duties a general contractor owes to employees of its subcontractors. See Vargas, 194 Wn.2d at 730 ("'Existence of a duty is a question of law.'") (quoting Hertog v. City of Seattle, 138 Wn.2d 265, 275, 979 P.2d 400 (1999)).

[8] Capers v. Bon Marche, Div. of Allied Stores, 91 Wn. App. 138, 142, 955 P.2d 822 (1998).

[9] Id. at 143.

[10] Id. at 142.

[11] 194 Wn.2d 720, 452 P.3d 1205 (2019).

4

At oral argument, CDK contended it has no duty of care to the employees of a subcontractor absent a factual determination that it exercised control over the subcontractor's work site. CDK misreads the controlling case law.

In Vargas, our Supreme Court unambiguously stated that a general contractor can be directly liable for breaching either its statutory or common law duties regarding workplace safety.[12] WISHA establishes a general contractor's statutory duties, and it owes these specific duties to "all employees working on the premises."[13] Since WISHA's enactment in 1973, these statutory duties have existed irrespective of a general contractor's exercise of control over a subcontractor's work.[14] The common law also imposes a duty to see that proper

---

[12] Id. at 729. CDK claimed at oral argument that allowing a general contractor to be held directly liable for breaches of WISHA amounted to imposing either vicarious or strict liability. CDK misapprehends the scope of its statutory duties under WISHA. A general contractor has a specific, direct duty to all employees on a worksite to—among other duties—establish, supervise, and enforce an accident prevention program. Id. at 735, 737 (citing WAC 296-155-100(1)). When a plaintiff shows a general contractor breached this duty and proximately caused him injury, then liability can attach. Because this standard requires proof of the general contractor's own negligent breach of its duty of care, this is neither vicarious nor strict liability.

[13] Stute v. P.B.M.C., Inc., 114 Wn.2d 454, 457-58, 788 P.2d 545 (1990).

[14] See id. at 464 ("[W]e hold the general contractor should bear the primary responsibility for compliance with [WISHA] safety regulations because the general contractor's innate supervisory authority constitutes sufficient control over the workplace."); Adkins v. Aluminum Co. of Am., 110 Wn.2d 128, 153, 750 P.2d 1257 (1988) (RCW 49.17.060(2) "applies [to a general contractor] when a party asserts that the employer failed to comply with a particular WISHA standard or regulations. In such a case, all employees who work on the premises of another employer are members of the protected class.").

safety precautions are taken at the job site it oversees.[15] This duty of care exists because a general contractor's "general supervisory functions are sufficient to establish control over [a subcontractor's] work conditions."[16] This duty extends to every part of the job site where the general contractor has the authority to supervise.[17] Even if an area of the job site were under a subcontractor's exclusive control, the general contractor's duty remains.[18]

Thoen argues special verdict form question one and several jury instructions misstated CDK's duties and prejudiced him. Question 1 on the special verdict form required that the jury stop deliberating if it found CDK did not "exercise control over" Thoen's work.[19] Jury instruction 12 required that Thoen prove CDK "retained control over [AmRail]'s work site" for the jury to hold it liable for any breach, including breach of its statutory duty.[20] Similarly, jury instruction 16 prohibited finding CDK liable "unless you find that [CDK] retained actual control or the legal right of control over the manner, means and methods in which [AmRail] performed its work."[21]

---

[15] Vargas, 194 Wn.2d at 730 (citing Kelley, 90 Wn.2d at 332).

[16] Kelley, 90 Wn.2d at 331.

[17] Vargas, 194 Wn.2d at 733 (citing Kelley, 90 Wn.2d at 332).

[18] Id. ("[A] general contractor with supervisory authority over an area must ensure the area is safe regardless of whether the general contractor is present—a general contractor cannot shirk its duties merely by vacating the premises.").

[19] CP at 4402.

[20] CP at 4422.

[21] CP at 4427.

The special verdict form and the jury instructions misstated the scope of CDK's statutory and common law duties. Under RCW 49.17.060(2), a general contractor's duty to comply with WISHA is based upon its innate authority over the job site.[22] CDK's right to exercise authority meant it had a statutory duty to Thoen regardless of whether it exercised its authority.[23] CDK also had common law duties to Thoen because it had the authority to supervise the part of the job site where he worked.[24] Because question 1 on the special verdict form and jury instructions 12 and 16 misstated the law and misled the jury, the court erred by issuing them.

The court also erred by adopting jury instruction 13. That instruction explained a general contractor met the standard of ordinary care if it took reasonable steps to provide a safe work environment "within common areas it controls."[25] Our Supreme Court rejected this "common work area" concept in

---

[22] Stute, 114 Wn.2d at 462-64.

[23] CDK contended at oral argument that it had no duty to Thoen absent an exercise of control over AmRail because Vargas explained a general contractor could be directly liable for breaching its WISHA duties. CDK appears to misapprehend the meaning of "direct liability." "Direct liability" is "liability for breach of one's own duty of care." 16 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE: TORT LAW AND PRACTICE § 4.1, at 178 (4th ed. 2013). If CDK had a statutory duty to Thoen only after exercising control over AmRail, then only vicarious liability could attach to it. See id. ("Vicarious liability is legal responsibility by virtue of a legal relationship."); Vargas, 194 Wn.2d at 730 ("[A] general contractor . . . will be 'vicariously liable for the negligence of any entity' over which it exercises control.'") (quoting Afoa II, 191 Wn.2d at 122-24).

[24] Vargas, 194 Wn.2d at 733.

[25] CP at 4424.

Vargas and explained a general contractor's common law duty actually extends to all portions of a job site "regardless of whether an expert other than the general contractor happens to be in charge of a specific job in the area."[26] In light of Vargas, jury instruction 13 misstated the law by limiting CDK's duty only to common areas.

Because the special verdict form and jury instructions misstated the law, Thoen is entitled to a new trial if the misstatements prejudiced him.[27] Before concluding CDK did not "exercise control" over Thoen, the jury asked the court, "How broad is the meaning of 'exercise control' . . . ? Does it require active supervision, or is it more general, including not just 'actual control' but also a legal relationship to broader supervision?"[28] The jury was confused about how to answer question 1 on the special verdict form, and its question revealed a fundamental misunderstanding about the scope of CDK's statutory and common law duties to the extent it believed proof of "active supervision" or "actual control" was required. Notably, Thoen had warned the trial court that the jury could be confused by the instructions and verdict form because a general contractor could fail to comply with WISHA without being viewed as controlling a subcontractor's work. Because the jury instructions and special verdict form misled the jury,

---

[26] Vargas, 194 Wn.2d at 733.

[27] Capers, 91 Wn. App. at 142.

[28] CP at 4406. The jury referred to "¶ 17" as the source of the phrase "exercise control," but the record does not reveal where to find paragraph 17. Because the phrase "exercise control" appeared in special verdict question 1 and the jury answered only that question, "¶ 17" was likely a misprint.

8

misstated the law, and resulted in a legally immaterial finding that prevented the jury from considering material issues, Thoen was prejudiced. Retrial is required.

Thoen also assigns error to a jury instruction and special verdict form question regarding apportionment of fault to AmRail. We reach these issues to provide guidance on retrial.

Pretrial, the trial court concluded it was "going to allow, essentially, an empty chair defense" and "allow the jurors to apportion damages amongst those parties . . . Mr. Thoen, [AmRail], and CDK."[29] Jury instruction 20 directed the jury to "determine what percentage of the total negligence is attributable to each entity that proximately caused" Thoen's injury, including AmRail.[30] Question 8 of the special verdict form asked the jury to apportion 100 percent of the total liability for Thoen's injury between Thoen himself, CDK, and AmRail. And question 3 of the special verdict form asked whether "the actions or omissions of immune entity [AmRail] [were] a proximate cause of [Thoen's] damages?"[31]

RCW 4.22.070(1) requires that a jury "determine the percentage of the total fault which is attributable to every entity which caused the claimant's damages except entities immune from liability to the claimant under Title 51 RCW." Title 51 RCW, the Industrial Insurance Act, immunizes employers against lawsuits from

---

[29] Report of Proceedings (Sept. 5, 2018) at 188.
[30] CP at 4433.
[31] CP at 4403.

employees injured while working.[32] RCW 4.22.070(1) prohibits the jury from considering the fault of "those entities immune from liability to the claimant under Title 51 RCW." The jury should not be asked "to make an irrelevant determination of the immune employer's fault."[33]

The legislature implemented this policy to ensure that the injured worker's recovery, the Department of Labor & Industries' reimbursement, and the third-party defendant's liability exposure would not be reduced by the worker's employer's fault for the injury.[34] A defendant, such as a general contractor, can argue the immune employer was the proximate cause of the worker's injury, but "the exact percentage of fault attributable to an immune employer has no legal effect on the liability of the parties."[35] The legislature also enacted this statutory scheme to preclude a general contractor from raising an empty chair defense when sued by a subcontractor's injured employee.[36]

Here, it is undisputed that AmRail was immune under Title 51. RCW 4.22.070(1) prohibited the jury from considering AmRail's fault when apportioning liability. Jury instruction 20 and question 8 of the special verdict form incorrectly directed the jury to do so. The court also erred by approving special

---

[32] Gilbert H. Moen Co. v. Island Steel Erectors, Inc., 128 Wn.2d 745, 752, 912 P.2d 472 (1996).

[33] Edgar v. City of Tacoma, 129 Wn.2d 621, 633-34, 919 P.2d 1236 (1996).

[34] Id. at 632.

[35] Id. at 633.

[36] Moen, 128 Wn.2d at 761.

verdict question 3. By asking the jury to determine whether AmRail proximately caused Thoen's injuries, it effectively ordered the jury to consider an immune employer's liability as part of an empty chair defense.

On retrial, no attempt should be made to allocate fault to Title 51 immune employer AmRail, nor should CDK be allowed to raise an empty chair defense. CDK can argue it was not at fault without requiring a legally irrelevant and statutorily prohibited jury determination of an immune employer's fault.

Therefore, we reverse.

WE CONCUR: